## · A SECONDARY BOYCOTT NOT PERMISSIBLE.

Common Pleas Court of Hamilton County.

THE H. H. MEYER PACKING COMPANY, ROBERT JACOB AND EMIL
HELFESRIEDER, v. BUTCHERS' UNION LOCAL NO. 232 ET AL.

Decided, February 8, 1916.

*Illegal Efforts by Labor Union to Coerce Employer—Conspiracy to
Injure Business of Customers of Employer, Having no Relation to
the Union, May be Enjoined—No Protection in the Clayton Act for
a Secondary Boycott.*

1. The recently enacted federal statute, known as the Clayton act,
   does not withdraw the protection of the law from tradesmen
   whose business it is sought to ruin by a secondary boycott.
2. A boycott of customers of a wholesale concern, in order thereby to
   compel said concern to treat with representatives of the labor
   union in order to preserve its business, is an unlawful interference
   with the rights of persons with whom the union has no relation,
   and constitutes a secondary boycott, which is not permissible and
   may be enjoined.

*Nicholas Klein*, for the motion.
*M. C. Slutes, C. J. McDiarmid* and *Michael G. Heintz*, contra.

NIPPERT, J.

The defendants, through their attorney, filed a motion to dis-
solve a temporary restraining order heretofore issued prohibit-
ing them from carrying certain banners in front of the premises
of Robert Jacob and Emil Helfesrieder, retail butchers, which
the plaintiff's claim were designed to injure and destroy their
respective business and prevented them from carrying out their
contracts with the H. H. Meyer Packing Company, amounting
to a conspiracy.  One of the banners carried in front of the
plaintiffs' stores read as follows:

"This store handles meat of the H. H. Meyer Packing Com-
pany, ·which is unfair to the Butchers' Union."

Another banner read as follows:

"Partridge Brand Meats H. H. Meyer Packing Company is unfair to the Butchers' Union."

Upon the hearing to dissolve the temporary restraining order, the following facts appeared:

The H. H. Meyer Packing Company is an old established firm in the city of Cincinnati, having been engaged in the wholesale meat business for a long time; there was not and is not now any trouble or dissatisfaction among its one hundred and fifty employees on any question pertaining to their wages, working conditions, hours of labor, etc., and the officers of the company, H. H. Meyer and his three sons, have never had any unfriendly controversy with their employees. About a year and a half ago one of the defendants in this case, Michael Schuld, was discharged for reasons good and sufficient to his employers and he soon thereafter organized what is known as the Butchers' Union Local No. 232. After the organization of this Local No. 232, Michael Schuld, who became one of its officers, in company with other officers of the local, called upon the president of the H. H. Meyer Packing Company, for the purpose "of consulting with him concerning the welfare of his workmen," as Mr. Schuld put it on the witness stand. H. H. Meyer, the president of the company, told the representatives of Local No. 232 that if any of *his employees* wanted to see him about their welfare he would be glad to talk to them at any time, but that he did not know Mr. Schuld and did not see why he should permit an outsider, and one not on his pay-roll or in his employ, the right to dictate what he should do regarding his employees; that if the employees had any complaint to make he would hear them at any time. This ended the first interview. Sometime thereafter Local No. 232, through Mr. Schuld, attempted another interview and was refused. Mr. Meyer testified that he does not draw a line in his shop between union and non-union men, and to any one who is willing to work he will give employment if there is an opening; that he pays as good wages as any shop in the city; that the working conditions in his plant are approved, and that

the hours of labor are the same as in other packing houses; that he has been in business for many years and he has never refused to confer with his workmen and deal with them directly on any question pertaining to their wages, working conditions, hours of labor, etc., and that he did not propose at this time of his life to submit to any outsiders interfering with his business without any apparent cause or reason.

The record does not disclose any evidence showing that there was any dissatisfaction among the company's men or that the company had discriminated between union and non-union men. In fact, as far as the record shows, the relationship of employer and employee appeared to be a very pleasant and satisfactory one at the plaintiff company's plant.

After the refusal on part of plaintiff company's president to enter into any negotiations with Local No. 232 and Michael Schuld, there appeared at the places of the plaintiffs, Jacob and Helfesrieder, the above-mentioned placards or signs, about four feet wide and two and a half feet high.

Emil Helfesrieder, one of the plaintiffs, testified that he was a retail butcher at Findlay Market, had dealt with the H. H. Meyer Packing Company for about twelve years, and that on or about October 7, 1915, one of the defendants, Thomas Rohneeh, placed himself in front of his premises, carrying a banner with this inscription: "This store handles meat of H. H. Meyer Packing Company, unfair to Butchers' Union." He noticed a falling off of his business after a few days and that soon his business decreased from $15 to $20 a day. He said that there were many union laborers living in the immediate neighborhood of his shop, whose families had been in the habit of dealing with him, and that heretofore he had sold the Meyer Packing Company goods to the satisfaction of his customers who had become accustomed to this special brand of meats.

Mr. Jacob, who has a retail butcher shop on State avenue, testified that he had been in the retail meat business for about eight months and that he has been a purchaser of H. H. Meyer Packing Company's meats; that a banner similar to the one

**460      HAMILTON COUNTY COMMON PLEAS.**

Packing. Co. v. Butchers' Union.      [Vol. 18 (N.S.)

carried in front of Helfesrieder's place appeared in front of his place of business on October 7, 1915, and that he noticed an immediate dropping off of his trade. He said he lost all of the street car men's business, which amounted to a profit of about $10 per day, and that his old customers admitted to him at the time they quit his store that they had done so on account of the banner.

Both of these retail butchers conduct union shops, that is to say, they employ only union men as meat cutters, etc., and testified that they never had any trouble with the union and have abided by their rules in the matter of pay, hours and shop conditions. They testified that Mr. Schuld came to their place of business and took out the union card and threatened to place the aforesaid banner in front of their premises unless they would discontinue purchasing meats from the Meyer Company. This command both Helfesreider and Jacob refused to obey, but continued their trade with the Meyer Packing Company. Helfesrieder said that the Meyer Packing Company had always treated him well, given him credit and had an established reputation in the city for carrying a high grade line of goods.

This court is now called upon, at the instance of the Butchers' Union Local No. 232, Michael Schuld et al, to dissolve the restraining order heretofore granted prohibiting the carrying of these banners and interference with the retail trade of Helfesrieder, Jacob and the Meyer Packing Company.

Counsel for plaintiffs, as well as counsel for defendants, have prepared excellent and voluminous briefs supporting their respective contentions.

Counsel for plaintiffs insist that the defendants have been guilty of a "secondary boycott," and for that reason the injunction ought not be dissolved but ought to be made permanent.

In order to sustain the charge of boycott, it is necessary for the plaintiffs to show that there exists a combination of several persons for the purpose of causing a loss to plaintiffs by causing others against their will to withdraw from these plaintiffs their beneficial business intercourse through threats that, unless a

compliance with their demands be made, the persons forming the combination (these defendants) will cause loss or injury to him.

Now the petition in this case clearly charges that the defendants have been guilty of boycotting the plaintiff's business by setting out that these defendants have entered into a conspiracy to injure and destroy the business of said plaintiffs, and combined to prevent Jacob and Helfesrieder from continuing their business relations with the packing company by attempting to destroy or injure or curtail the retail business of the aforementioned retail butchers in the manner and form hereinbefore set out.

All of our authorities hold that a combination to injure or destroy the trade, business or occupation of another by threatening or producing injury to the trade, business or occupation of those who have business relations with him is an unlawful conspiracy, regardless of the name by which it is known, and may be restrained by injunction.

Do the facts as set forth in the record of the case at bar justify the conclusion that a secondary boycott exists? That is really the only important question that we are called upon to determine in this cause.

It is not a question here whether a group of individuals have the right to form a labor organization for the protection of the interests of the laboring classes, nor is there a question here pertaining to the open or closed shop proposition, nor are there any questions before this court as to the respective rights of the employees of the Meyer Packing Company, or of the company's relation to said employees. It is merely a question whether or not the defendants shall be permitted to destroy the established business of a small shop-keeper in order thereby to gain its contention, whatever it may be, with the wholesale house. In other words, shall the innocent and industrious union butchers, Jacob and Helfesrieder, and other small retail shopkeepers and tradesmen, be crushed in order that thereby the H. H. Meyer Packing Company may be forced to receive the representatives of Butch-

ers' Union Local No. 232 and Michael Schuld in a conference, which the said packing company does not desire?

The method employed is thoroughly un-American and contrary to the spirit of our Constitution and Bill of Rights, which grants unto every man a free and unrestricted opportunity to enter into the limitless field of lawful trade and business, which has made this country of ours the haven of those from other shores where similar opportunities to live and let live are not presented in the same degree as here:

The case at bar is aggravated, as distinguished from an ordinary boycott, by the fact that it is a *secondary* boycott, and our courts have invariably contended that in all fairness and justice to society such combination and conspiracy known as secondary boycott is not permissible.

In one of the leading cases, decided by Judge Taft in 1889, while sitting in general term of the Superior Court of Cincinnati, being the case of *Moores & Company* v. *Bricklayers' Union No. 1 et al*, reported in 23 W. L. B., 48, the principle above enunciated is upheld. The law as laid down in the third syllabus of said case is the law today, to-wit:

"A combination by a trade union and others to coerce an employer to conduct his business with reference to apprentices and the employment of delinquent members of the union, according to the demand of the union, by injuring his business through notices sent to his customers and material-men, stating that any dealings with him will be followed by similar measures against such customers and material-men, is an unlawful conspiracy."

A combination between persons or parties merely to regulate their own conduct and affairs is permissible and such is a lawful combination even though others may be indirectly affected thereby. But a combination to do an injurious act, expressly directed against another by way of intimidation or constraint either of himself or of persons employed or seeking to be employed by him, is outside of allowable competition and therefore unlawful, and the wrongful interference with one's business and prospective customers is as much an infringement of the tradesman's

rights as though contractual relations actually existed and were interfered with.

Thus the occupation and trade of the plaintiffs, Jacob and Helfesrieder, by means of which they earned a livelihood and endeavored to better their respective conditions and to provide for and support themselves and their respective families, is property within the meaning of the law, and is entitled to protection as such.

Labor may organize the same as capital for its own protection and to further the interests of the laboring classes. They may strike and persuade and induce others to join, but when they resort to unlawful means and cause injury to others with whom they have no relation, the limit provided by law is passed and they may be constrained. In support of this principle of law we refer to the opinion of the Supreme Court of the state of Missouri, in *Lohse Patent Door Co.* v. *Fuelle,* 215 Mo. Rep., 421; *Hopkins* v. *Oxley Stave Co.,* 83 Fed., 912; *Gray* v. *Building Trades Council,* 91 Minn. Sup. Ct. Rep., 171; *Sherry et al* v. *Perkins et al,* 147 Mass., 212; *Toledo Railway Co.* v. *Pa. Co.,* 54 Fed., 730; *Pope Motor Car Co.* v. *Keegan,* 150 Fed., 148; *Huttig Sash & Door Co.* v. *Fuelle,* 143 Fed., 363; *O'Brien* v. *People,* 216 Ill., 354; and the leading case, decided May 5, 1911, by the United States Supreme Court, reported in Vol. 221 U. S., 418; *Gompers* v. *Buck Stove & Range Company,* to which reference is made by the court in support of refusing to grant defendant's motion to dissolve the temporary restraining order heretofore issued.

Most of the above cases were cited by Mr. Nicholas Klein, attorney for the defendants in this action, and have met with approval in the brief submitted by counsel for plaintiffs. So that, on the proposition of secondary boycott there can be no question as to the law and correctness of the court's conclusion herein.

It is contended by counsel for defendants that the Clayton act, recently passed by Congress, wipes out all the past decisions of our courts, both state and federal, pertaining to labor controversies. But we can not agree with learned counsel's con-

tention, for the reason that the Clayton act does not withdraw the law's protection from a tradesman whose business is attempted to be ruined by means of a secondary boycott, as is the fact in the case at bar.

As to the other questions involved, that is, whether or not the summons issued to the defendant, Butchers' Union Local No. 232, should be quashed, it may be stated that the said union appears of record in this case as one of the answering defendants, and admitted that Michael Schuld is its business representative and that Nicholas Klein is its attorney, and the record showed that the matter of secondary boycott was made the subject of discussion and resolution at the meeting of the defendant union, and that the boycott was a result of the concerted action of the union as testified to by its officers and business representative in open court.

Judge Morrow, of the United Circuit Court, held as follows, in the case reported in 85 Fed., 252, *Government* v. *California Coal Barons,* who had formed a combination in restraint of trade, in violation of the act of Congress, entitled, "An Act to Protect Trade and Commerce against Unlawful Restraints and Monopolies":

"In a suit in equit to restrain an alleged unlawful combination acting as an unincorporated association, it is sufficient that the association, together with a number of its members as individuals and officers are made parties defendant."

This sound and wholesome interpretation of the law successfully destroyed a coal monopoly on the Pacific Coast, which threatened the well-being of small users of coal. Judge Morrow, by this holding, broke the stranglehold which the coal monopolists had upon the business of the retailers and upon the small consumers, and the application of Judge Morrow's ruling in that case is justified in the case at bar, where the plaintiffs have made the unincorporated local union and its executive officer, Michael Schuld, parties to this action. The union has thus had its day in court and was in court in the person of its organizers, busi-

ness representative and officer, Michael Schuld, and its attorney, Nicholas Klein.

In view of the above, the motion to dissolve the temporary restraining order and the motion to quash the summons will be overruled and the injunction will be made permanent.