POPE MOTOR CAR CO. v. KEEGAN et al.

(Circuit Court, N. D. Ohio, W. D.   November 7, 1906.)

No. 1,992.

1. INJUNCTION—LABOR STRIKE—RIGHT OF PICKETING.

To interfere by violence by threats or by intimidation with others who are pursuing their natural and constitutional right to labor when and where they please is always unlawful, but peaceable persuasion used by workmen either singly or in combination to induce others to quit or refuse employment is lawful, and may lawfully be conducted by striking workmen by means of pickets, provided the pickets are so limited in numbers that their presence does not itself amount to intimidation, and so conduct themselves as to leave the persons solicited feeling that they are not being subjected to compulsion, but are at liberty to comply or not, as they please; and picketing so conducted will not be enjoined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 175.]

2. SAME—SCOPE—DISMISSAL AS TO INNOCENT PARTIES.

In a suit for an injunction to restrain striking workmen from unlawfully interfering with complainant's business and employés, in which a large number of persons are made defendants in their individual capacity, an injunction will be granted only against those who are shown to have participated in unlawful acts; but the other defendants are chargeable with knowledge of the injunction and its terms, and will be bound thereby.

In Equity. On motion for preliminary injunction.

Marshall & Fraser, for complainant.

Mulholland & Hartmann, for defendants.

TAYLER, District Judge. On October 5, 1906, the complainant filed its bill against John J. Keegan, J. M. Keck, and some 270 other persons, charging a conspiracy among the defendants, and with other persons unknown to the complainant, to carry into execution a strike at the factory of the complainant at Toledo; that one of the objects of the strike was to compel the complainant to submit to the dictation of Keegan and Keck, who were officials of the International Association of Machinists, as to the terms and conditions upon which the complainant should employ machinists; and that all of the defendants, except Keegan and Keck, had been in the employ of the complainant company, and, at the time of filing the bill, were out on strike. The bill proceeds to allege, in various forms, charges of threats, abuse, intimidation, and violence of which the defendants were guilty against men whom the complainant had employed to take the places of the strikers, and prays for an injunction restraining the defendants from doing the acts charged against them. At the time of the filing of the bill, a temporary restraining order was allowed. An application for

a preliminary injunction came up, and was heard on October 27th. A large number of affidavits were filed, and, by agreement of parties, testimony was taken orally; and we now have for determination the question as to whether or not a preliminary injunction, in the general terms of the restraining order heretofore allowed, shall be granted.

There is little controversy among counsel as to the law applicable to a case of this kind; the chief contention arising as to the application of the law to the facts in this case. The rules of law which I conceive to be well established, and which I shall apply to the consideration and determination of the questions now before the court, are, substantially, as follows: To interfere, by violence, by threats or by intimidation, with others who are pursuing their natural and constitutional right to labor when and where they please, is always wrong, and always unlawful. No sense of personal wrong, however great, however natural, or however excusable, can justify such interference. No offended sense of right, as, for instance, that another is unjustly "taking his job," gives warrant to such interference. The strikers themselves are entitled to no more rights than those whom they find working in their old places. Individual freedom is the chief of the rights of each. It cannot be said that a job is held except by mutual consent. It cannot be claimed by any intelligent man that one holds his job whether his employer desires it so or not. As well might we say that the workman, against his will, can be held to service by his employer.

But nothing can be better settled, either in law, in conscience, or in common sense, than that every man may seek or refuse work wheresoever he will; that workmen may combine for their mutual advantage; that they may persuade fellow workmen, or others, to leave their employment; but such persuasion must be such as to persuade by reason, and not compel by threat, or violence, or intimidation. One of the forms of persuasion which, under proper circumstances, the law recognizes as permissible, is "picketing" by strikers; that is to say, the detachment of men in suitable places for the purpose of coming into personal relations with the new workmen, in order, if possible, to induce them, by means of peaceful argument, to leave the places which they have taken, for such natural and proper reasons as may appeal to men in such circumstances.

Much has been said by the courts, and by others, as to the peace-disturbing quality of picketing; and it is claimed by many that picketing, though intended to be peaceable, and engaged in by no more than two or three at each station, necessarily results in violence or intimidation, and is itself intimidating. A learned judge, in 1867, said that, in his opinion, "it was impossible to have an effectual system of picketing without being guilty of that alarm, intimidation, and obstruction which is a breach of the law." Possibly that may still be true, but it cannot now be said without qualification, as it then could. In knowledge of their rights, in law-abiding spirit, in general intelligence, there has been a great advance, especially among skilled artisans. In this country, at least, they make up a large part of our intelligent and law-abiding citizens.

If we can apprehend anything, we must observe that a better practice is prevailing, due, doubtless, to the increasing intelligence and good

sense of those involved, and also to the fact that courts have come to be recognized as ready to protect persons in their rights, and to punish those who unlawfully interfere with them. Undoubtedly violence and intimidation have, to some extent, been associated with picketing in this case; not always, though perhaps generally, at the hands of the strikers themselves. The idle, the dissolute, and the lawless are likely to take advantage of such a situation as this to commit unlawful acts, and the state of mind into which striking mechanics are likely to come, in such a case as we have here, is more or less likely either to make them indifferent to these acts when committed by others, or, in some instances, to encourage them. Nevertheless, I cannot believe that, under proper circumstances, and with such a sense of self-restraint as men can exercise, picketing may not be properly conducted.

A very instructive case in this connection is Karges Furniture Co. v. Amalgamated Woodworkers' Local Union et al. (Ind. Sup.) 75 N. E. 877, 2 L. R. A. (N. S.) 788. The Supreme Court of Indiana, in that case, say:

"Whether picketing is lawful or unlawful depends, in each particular case, upon the conduct of the pickets themselves. Under no circumstances have pickets the right to employ force, menaces, or intimidation of any kind, in their efforts to induce nonstriking workmen to quit, or those about to take the strikers' places to refrain from doing so; neither have they the right, as pickets or otherwise, to assemble about the working place in such numbers or in such manner as to impress workmen employed, or contemplating employment, with fear and intimidation. It is, however, generally conceded in this country and in England that workmen, when free from contract obligations, may not only themselves, singly and in combination, cease to work for any employer, but may also, as a means of accomplishing a legitimate purpose, use all lawful and peaceful means to induce others to quit or refuse employment. The law, having granted workmen the right to strike to secure better conditions from their employers, grants them also the use of those means and agencies, not inconsistent with the rights of others, that are necessary to make the strike effective. This embraces the right to support their contest by argument, persuasion, and such favors and accommodations as they have within their control. The law will not deprive endeavor and energy of their just reward, when exercised for a legitimate purpose and in a legitimate manner. So, in a contest between capital and labor, on the one hand to secure higher wages, and on the other to resist it, argument and persuasion to win support and co-operation from others are proper to either side, provided they are of a character to leave the persons solicited feeling at liberty to comply or not, as they please. Likewise, a union may appoint pickets or a committee to visit the vicinity of factories for the purpose of taking note of the persons employed, and to secure, if it can be done by lawful means, their names and places of residence for the purpose of peaceful visitation."

With the rule laid down in this case I am in full accord. I am no less anxious to protect striking workmen who are acting within their rights than I am determined to protect the rights of others who are seeking, or engaged in, lawful employment.

Some of the defendants named in this case are shown to have participated in violence and intimidation. As to most of the defendants, there is a total absence of testimony respecting them. True, it is stated by some of the witnesses that large numbers of strikers were congregated in the neighborhood of the works, and used threatening and intimidating language to employés and officers of the complainant.

Undoubtedly such conduct is unlawful. The presence of a large number of strikers, under such circumstances, is in itself intimidating. But no proof has been offered identifying any of the persons who made up this intimidating crowd of strikers. It is, as I have said, menacing and intimidating for any considerable number of strikers to assemble for the purpose of "picketing" or "persuading." And so, also, would be the establishing of many picketing stations in the same neighborhood, for the effect of the mass would be the same, in either case. No intelligent man fails to understand what is meant by picketing which is solely for the purpose of lawful persuasion.

Some claim is made on the part of the complainant that, in view of the testimony of the general character to which I have just referred, any injunction allowed in this case ought to reach all of the defendants named in the bill; and the chief ground upon which the propriety of this claim is rested is that, except Keegan and Keck, all of the men went out on strike, and that, if they were law-abiding and did not intend to participate in acts of intimidation or violence, they would not be harmed by the issuance of an injunction against them. I cannot escape the conclusion that, under the circumstances of this case, where the defendants are made such in their individual capacity, and not in any organized capacity, it would be a gross injustice to attach to persons who have not been shown to be participants in these transactions the stigma of an injunction, or to make them—as they might be without further order of the court—subject to the payment of any costs which necessarily accrue in such a case. In the case in Indiana, to which reference has just been made, a somewhat similar situation arose, and there the injunction was allowed against such of the defendants as were shown to have participated in the violence or intimidation. Those who were not thus found to be unlawful participants in wrongful acts were not enjoined. That will be the order in this case. Nor is it necessary, in order to hold the defendants who are not enjoined to a strict compliance with the terms of such an injunction as will be issued in this case, that they should be named as defendants who ought to be enjoined.

The Supreme Court of the United States, in Ex parte Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110, has definitely determined the law under such circumstances. It is there held that, to render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice. That was a case which arose in this jurisdiction, and the question to which I have just referred was distinctly made and decided. That rule would apply, not only to persons named in this bill who are not found guilty of any violation of the rights of the complainant, but also to any other persons who, with knowledge of the issuance of the injunction, violate its terms.

As to those who are parties to this bill, and not included by name within its terms as violators of the rights of others, they must be held to have knowledge of this opinion, and of the decree herein. Union Pacific Ry. Co. (C. C.) v. Ruef, 120 Fed. 116. I cannot help but be-

lieve that the officers of the International Association of Machinists, and the leading and influential spirits among the men who have gone on strike, will fully understand the views of the court as to their rights and duties, and that a real and successful effort will be made to keep the conduct of those with whom they are associated within the limits which are defined in this opinion. The propriety of the rule as to picketing as I have laid it down is, as to them, on trial.

I find that the defendants Jacob Jeuk, John Martinek, Sam Eavou, W. M. Palmer, Hank Herman, and T. Snell ought to be enjoined; and an order may be entered, in the terms of the restraining order heretofore issued, enjoining them, and all other persons, from interfering with the business of the complainant and its employés, or those who are proposing to enter its employment, as defined in such order.

The application for a preliminary injunction against the other defendants named is denied.