THE S. A. CLARK LUNCH CO. *v.* THE CLEVELAND
WAITERS & BEVERAGE DISPENSERS LOCAL No. 106
ET AL.

*Injunction—Labor union—Restaurant entitled to reject union
proposals and determine employes—No vested right to
patronage of persons adversely affected—Union may in-
fluence and control patronage of members and friends—
Distributing cards asking public not to patronize restaur-
ant, not enjoined—Loss of business and property not
basis for injunction.*

1. Although restaurant company had legal right to reject pro-
   posals of union, and employ whom it desired, it had
   no vested claim to patronage of persons who, knowing
   of its rejection of union's proposals, did not wish to
   give it their business.
2. Where restaurant refused proposal of union that it em-
   ploy union labor, union had right in lawful way to in-
   fluence and control patronage of members and friends
   in favor of themselves and those with whom they had
   contracts.
3. Where restaurant refused labor union's proposal that it
   employ union labor, it cannot enjoin, as unlawful boy-
   cott, peaceful distribution of cards by labor union asking
   public not to patronize unfair place.
4. That restaurant owner showed substantial loss in business
   and profits from boycott by trade union *held* not basis
   for injunction; it having no vested property right in
   business lost.

(Decided May 18, 1926.)

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Calfee, Fogg & White*, for plaintiff.
*Messrs. Cline & Patterson*, for defendants.

MIDDLETON, J.  This cause comes into this court

on appeal from the court of common pleas, and is an action for an injunction. It was submitted in the lower court and in this court on the pleadings and an agreed stipulation or statement of facts. The lower court denied the plaintiff any relief.

The plaintiff is a corporation owning and operating a restaurant at 1801 East Ninth street in the city of Cleveland. The defendant associations are unincorporated labor unions or organizations, and the individual defendants named are officials of said defendant unions. The material facts involved in this controversy, as they appear in the agreed stipulation, are as follows:

"Plaintiff employs in and about its business at this location more than twenty-five persons upon terms mutually agreed upon between the plaintiff and each and all of its employees. There is not, and has not been, any dispute or controversy between plaintiff and any of its employees in regard to wages, hours, working conditions, or any other matter. None of the employees of the plaintiff are, or at any time while in the employ of the plaintiff have been, members of any of the defendant labor unions, organizations, or associations.

"On and prior to February 25, 1924, plaintiff had an established and profitable trade and patronage in its business.

"Prior to February 25, 1924, defendants requested plaintiff to enter into an agreement with defendant labor unions, by the terms of which the plaintiff should agree to employ only members of the defendant unions in and about its place of business, and by said agreement established for

them fixed wages, hours of employment, and conditions of labor, such as are uniformly required of persons conducting restaurants and lunch counters by members of said defendant labor unions and organizations throughout the city of Cleveland and vicinity, and different from the wages, hours, and working conditions now mutually agreed upon by, and being satisfactory to, plaintiff and its present employees. Plaintiff refused to comply with the request of the defendant unions or to enter into such an agreement with them.

"Beginning on February 25, 1924, and continuously thereafter on each and every day during the time from 11:00 o'clock a. m. to 2:30 o'clock p. m., and from 5:30 o'clock p. m. to 8:00 o'clock p. m., defendants, for the reason of the refusal of the plaintiff to enter into said agreement, employed two persons to hand out and distribute to patrons, prospective patrons of the business of the plaintiff, and other persons upon the street and sidewalk in front of and about the entrances to the premises and place of business of the plaintiff, the printed cards described and referred to in the amended petition of the plaintiff.

"The purpose of handing out and distributing said cards was to inform the public, and particularly patrons and prospective patrons of the business of the plaintiff, of the matters stated on the said cards to induce the public, and particularly patrons of the plaintiff's business, not to patronize said place, because it had refused to enter into the agreement with the defendant unions aforesaid; to induce the plaintiff to employ union labor; to induce the plaintiff thereby to enter into the

aforesaid agreement with the defendant unions and their members, and to enable the members of the defendant labor unions to procure employment from the plaintiff at higher wages and under working conditions and hours of employment different from those paid and maintained by plaintiff in its business.

"That subsequent to the handing out of said cards, and as a result thereof, the receipts from the business of the plaintiff decreased about $80 per day, and the patrons of the plaintiff decreased in number about 200 per day.

"Unless restrained by order of this court, the defendants will continue to hand out these cards at the times, places, and in the manner stated so long as the plaintiff shall refuse to enter into such agreement with the defendants as is hereinabove referred to and defined.

"That the defendant unions, their officers and agents, handed out said cards through their employees aforesaid, pursuant to an agreement between the defendant unions and their members, and that said activities of said defendants as herein stated were engaged in pursuant to a common purpose of the defendant unions and their respective members.

"The defendant locals Nos. 106, 107, and 167 are labor organizations, having many hundreds of members in the city of Cleveland, Ohio, and vicinity, and whose members are cooks, waiters, and waitresses, who perform, and offer to perform, the kind of labor required by the plaintiff in the conduct of its restaurant. That the purpose of said organization is declared in their respective

constitutions to be to uplift the mental, moral, and social conditions of employees in restaurants and hotels in Cleveland and vicinity, and to obtain for them better conditions for their labor, better hours, and better wages, and to increase their influence among the populace of the city of Cleveland.

"That the individual members of the defendant unions have spent a great part of their lives in becoming proficient in their calling.

"That the passing of the cards and doing of the things hereinbefore set forth has been done without violence or force, and no statement other than that upon the cards hereinbefore mentioned has been made to any person or persons by the persons handing out said cards in any form or manner whatsoever.

"The plaintiff pays its employees less wages and their hours of labor are longer than those usually received and worked by employees in restaurants employing only members of the defendant labor unions and organizations. That, if the plaintiff does accede to and comply with the request of the defendant unions, it will add substantially to the cost and expense of conducting its business. That the sidewalk in front of plaintiff's business on Ninth street is approximately 30 feet wide, and thousands of people pass said place hourly. That there are in the city of Cleveland large numbers of restaurants and hotels which employ union labor at the terms and under the conditions which the defendant unions requested the plaintiff to engage their employees. That there are large numbers of restaurants in the city of Cleveland which do not employ labor under union conditions, and which

do not pay as great wages as restaurants which employ members of defendant labor unions are required to pay, and which cause their employees to work longer hours than union restaurants.''

Plaintiff asks for an injunction restraining all the defendants from further engaging in any of the alleged unlawful acts set forth in the stipulation, from further distributing the cards referred to therein, and from maintaining pickets in front of or about its place of business, or annoying, intimidating, coercing, or in any way deterring, patrons or prospective patrons, or any person, from entering its place of business.

It is manifest from the facts on which plaintiff's right of action rests that the things it complains of constitute a boycott, and the case in many respects is an unusual and exceptional one. It differs from the ordinary case of labor disputes in many respects, of which not the least important is the absence in the evidence of any proof of any intimidation or coercion of any kind or character, save and except that which may legitimately be inferred to follow and result from the mere distribution in the manner described of the cards described. It is important to note also that such cards are distributed without any comment, statement, expression, or communication of any kind by and from the distributors to those who receive them. The cards in question bear this inscription:

''S. A. Clark's Restaurant, 1801 E. Ninth street, does not employ union help in the dining room and kitchen, and we respectfully ask the public to refrain from patronizing this unfair place.

"[Signed] Joint Executive Board H. & R. E. I. A. and B. I. L. of A."

The determinative question before us in this case is whether the distribution of said cards in the manner aforesaid, and at the place described, is an invasion of any legal rights of the plaintiff. What such rights are has received many and different interpretations by the courts of various jurisdictions in this country, and it would be a hopeless task to attempt to reconcile and harmonize the many decisions on this question. While elaborate briefs have been filed dealing with every phase of this controversy, they are helpful only when they bear directly on this one question. The Supreme Court of our state, in the recent case of *La France Electrical Construction & Supply Co.* v. *International Brotherhood of Electrical Workers,* 108 Ohio St., 61, 140 N. E., 899, approved the peaceable picketing of a manufacturing plant by strikers. In other words, it held that such picketing was lawful, if it was not accompanied by physical violence, abuse, intimidation, or any form of coercion or duress, direct or indirect. We know of no reason why the same rule with its limitations may not apply to boycotts. It was so applied in the case of *McCormick & Fisher* v. *Local Union No. 216 Hotel and Restaurant Employees,* 13 C. C. (N. S.), 545, 22 C. D., 165, where a majority of the court held:

"Peaceable persuasion and argument, oral, printed or written, by members and officers of labor unions to divert patronage from a hotel claimed by them to be 'unfair to labor' will not be enjoined as an unlawful boycott."

We take it that it will be conceded that the plaintiff company in the instant case had a legal right to reject the proposals of the union, and had the right to employ whom it desired to employ, at wages and under conditions of its own choice. But here its legal rights ended in respect to the matters in dispute. It had no vested claim to the patronage of those whose interests were adversely affected by its actions, nor did it have any vested right to the patronage of any class of persons, or any person, who, knowing of the situation and of its rejection of the proposals of the defendants, did not wish to give it his business. On the other hand, the defendants, by reason of their obligation to competitors who employed union labor, and for the protection of their members, had a legal right in a lawful way to influence and control the patronage of their members and of their friends in favor of themselves and those with whom they had contracts. This business or patronage is a concrete asset of the defendants, which they have a legal right to control and to use for the benefit of their organizations, the members thereof, and those in business who are under contract to employ union labor.

In *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S., 184, 209, 42 S. Ct., 72, 78 (66 L. Ed., 189, 27 A. L. R., 360), the court says, speaking through Chief Justice Taft:

"To render this combination at all effective, employees must make their combination extend beyond one shop. It is helpful to have as many as may be in the same trade in the same community united, because in the competition between

employers they are bound to be affected by the standard of wages of their trade in the neighborhood. Therefore, they may use all lawful propaganda to enlarge their membership and especially among those whose labor at lower wages will injure their whole guild. It is impossible to hold such persuasion and propaganda, without more, to be without excuse and malicious.''

The plaintiff, having determined to operate its business as a nonunion concern, and having refused to employ union labor, may not reasonably expect, nor has it the right to expect, the latter's business and support; and, furthermore, it has no legal right to prevent a lawful publicity of its actions in this behalf by union labor. It necessarily follows that if plaintiff has a legal grievance in this case, it rests only in the method and manner of the distribution of the cards aforesaid. The *La France case, supra,* and the *McCormick case, supra,* clearly define the line of demarcation between what is lawful and what is not lawful in this respect. If the methods adopted do not intimidate or coerce, and are without violence, they are lawful. When they involve abuse, violence, intimidation, or coercion, they are unlawful. There is not a scintilla of evidence in this record of any facts to show that any person was intimidated, abused, threatened, or coerced by receiving from the hands of the representatives of the defendants the cards in question.

It is shown that the acts complained of are causing the plaintiff a substantial loss in its business and profits. This fact furnishes no basis for judicial interference, for the plaintiff has no

vested property right in the business so lost to it. This is so for the reason that, while it had a legal right to determine its course of action, it must be held to have considered in that connection the influence of union labor on the public, and the benefit of its support and patronage. These are factors in the situation it was bound to consider. It chose to reject union labor and to employ non-union labor at lower wages and longer hours of service. It was bound to know that it could not legally prevent publicity in respect to its action. Whatever financial loss it now suffers is therefore due to causes of its own making, and within its control, which it must be held to have anticipated. The lower court in its opinion, filed here with the briefs, in summing up the case, said:

"There is no evidence of any intimidation or any form of coercion or duress, direct or indirect, unless the court should assume that the mere handing out of these cards in front of plaintiff's place of business would constitute an intimidation or coercion. The court can understand a situation where such action would be coercive and would intimidate, but no such conditions or situations are here disclosed. If there is a rightful and wrongful way to do a thing, the court can never assume, in the absence of evidence to the contrary, that wrong was done. Plaintiff in the present case alleges unlawful conduct, and the burden is upon it to prove it. This it has not done."

We concur in these conclusions of the lower court, and under the doctrine of the cases cited we find that the evidence shows no right of action in the plaintiff.

The petition, therefore, is dismissed, at its costs.

*Petition dismissed.*

MAUCK, P. J., and SAYRE, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges LEVINE, SULLIVAN and VICKERY, of the Eighth Appellate District.