Argued March 5; modified November 25; rehearing denied
December 30, 1930.

CROUCH *v.* CENTRAL LABOR COUNCIL ET AL.
(293 P. 729)

*John W. Kaste* of Portland for respondent.
*W. S. U'Ren* of Portland for appellants.

COSHOW, C. J. ■ Attorneys in this case are to be commended for stipulating the facts. The law is well settled that when the facts are stipulated the court is bound by them, and the case must be decided upon said facts and such other evidence as may be adduced. The exhibits consist of a copy of a form for an agreement which plaintiff refused to sign and a copy of the Oregon Labor Press showing the objectionable matter complained of by plaintiff. In the instant case no other evidence was adduced except said exhibits.

■ We need not look further than the Oregon Reports for authority that laborers may organize to improve their conditions both as to the machinery with which they work and other physical conditions as well as to increase the amount of their wages: *Longshore Printing Co. v. Howell,* 26 Or. 527 (38 P. 547, 28 L. R. A. 464, 46 Am. St. Rep. 640). That case is well considered. The opinion is exhaustive and cites numerous authorities for the conclusion expressed in the opinion. Among other things it is said in page 540:

"It must be understood, however, that these associations, like other voluntary societies, must depend for their membership upon the free and untrammeled choice of each individual member. No resort can be had to compulsory methods of any kind either to increase, keep up, or retain such membership. Nor is it permissible for associations of this kind to enforce the observance of their laws, rules, and regulations through violence, threats, or intimidation, or to employ any methods that would induce intimidation or deprive persons of perfect freedom of action."

The acts of defendants consist of a young lady walking to and fro in front of plaintiff's restaurant exhibiting an issue of the Oregon Labor Press on which was printed in large letters almost two inches high, very black and broad: "CROUCH EMPLOYEES WORK 7 DAY WEEK". Then in smaller letters almost an inch high: "Culinary unions are appealing to public to rebuke practices. Low wages and no day of rest marks employment policy of Crouch's places." All said letters could be easily read 50 to 75 feet distant.

■ If this conduct on the part of defendants was not intended to intimidate plaintiff and his employees, then there was no purpose at all in that conduct. The employees of plaintiff have the same right to contract

their services for such compensation as they please as other laborers have to organize to advance their interests and welfare. The right to contract is a property right protected both by the Constitution of the United States and by the Constitution of the State of Oregon: U. S. Constitution, Preamble, Amendment XIV; Oregon Constitution, Preamble, art. I, § 20.

"Yet the term 'liberty,' as used in the constitution, is not dwarfed into mere freedom from physical restraint of the person of the citizen, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. It includes the right to be free to use his faculties in all lawful ways; to *live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or vocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential* to his carrying out these purposes to a successful conclusion." 6 R. C. L. 259-260, § 244. [Italics are the writers.]

There was no trouble existing between Crouch and his employees. Defendants, therefore, had no right to interfere with their relation. They could not possibly injure Crouch without injuring his employees because it is agreed in the stipulation that in addition to paying the wages agreed upon between plaintiff and his employees the latter received a commission on all meals served over and above a certain number. It is agreed in the stipulation that the conduct of defendants, calling attention of the public to plaintiff's relation to his employees through the lady employed for that purpose, was damaging to plaintiff.

If the acts of defendants complained of were not picketing in the technical sense, it was designed to accomplish the same purpose for which picketing is used. In substance it was the same as picketing. One of the definitions of the word "picket" is:

"To post watchers at the approaches to (a place of employment affected by a strike) in order to ascertain those who work there and persuade them, or otherwise influence them, to give up the work." Webster's Dictionary.

Bouvier's Law Dictionary, Baldwin's Century Edition, defines the word "picketing" as follows:

"Picketing by members of a trade union or strikers, consists in posting members at all the approaches to the works struck against for the purpose of reporting the workman going to or coming from the works; and to use such influence as may be in their power to prevent the workman from accepting work there."

" 'Picketing', it has been said, is a term borrowed from the nomenclature of warfare; and its commonly accepted meaning as used in relation to industrial disputes is the stationing of men at or near the plant or shop of the party with whom workmen have a dispute, to induce other workmen to withdraw from or not to enter his employ or to induce his customers or the general public to abstain from business relations with him." 32 C. J., § 261.

■ From these definitions it seems that picketing has reference particularly to disputes between an employer and his striking employees. Such picketing is permissible under the law because the employees have a right to inform the public regarding their side of the dispute: *Duplex Printing Press Co. v. Deering,* 254 U. S. 443 (41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196); *Greenfield v. Central Labor Council,* 104 Or. 236 (192 P. 783); *American Steel Foundries v. Tri-City C. T. Council,* 257 U. S. 184 (66 L. Ed. 189, 42 S. Ct. 72, 27 A. L. R. 360); *Truax v. Corrigan,* 257 U. S. 312 (66 L. Ed. 255, 42 S. Ct. 124, 27 A. L. R. 375).

There is no authority cited in the instant case which authorizes or supports the right of laborers or other persons to directly interfere between an employer

and his employees when there is no controversy between them. Those interfering with the relations of an employer and his employees are intermeddlers: *Heitkemper v. Central Labor Council,* 99 Or. 1, 29 (192 P. 765), and authorities therein cited. The two dissenting opinions in the last case cited are based on the ground that there was a controversy between the plaintiffs and defendants. The reasonings in both of the dissenting opinions are in harmony with this opinion. We could not sustain defendants' contention in the instant case without overruling both the Heitkemper case and the Greenfield case.

■ It is argued by defendants that the court erred in finding that the damages to plaintiff are irreparable. The stipulations agree that the plaintiff has been damaged by the conduct of defendants. There is no standard by which the amount of that damage can be measured with reasonable accuracy. Irreparable damage does not have reference to the amount of damage caused but rather to the difficulty, not to say impossibility, of measuring the amount of damages inflicted: *Winslow v. Fleischner et al.,* 110 Or. 554, 563 (223 P. 922), and authorities there cited.

■ The decree is too broad in this particular: Paragraph four reads as follows:

"(4) From exhibiting to the public in general and to the intending patrons of plaintiff in general in front of plaintiff's said places of business, a copy of the Oregon Labor Press containing any *reference whatever to plaintiff or his said places of business.*"

It would violate the constitutional provisions granting to said Oregon Labor Press, as well as to all other publications, the right of the free expression of its opinions. If the Oregon Labor Press should publish libelous or slanderous matter concerning plaintiff, he

has an action at law against said Labor Press, but the court should not go so far in its prohibitory injunction as to prevent the said Labor Press from publishing freely its own views. It is responsible to plaintiff for the abuse of its high privilege.

■ The display of articles in the Labor Press in large print in the immediate vicinity of plaintiff's place of business, such as was exhibited in the acts complained of in the instant case, should be prohibited. It is not the publication of the article but the display of that article in front of plaintiff's place of business in the manner complained of that is unlawful. Such a display is equivalent to carrying a banner or wearing a sash with objectionable reference to plaintiff. The decree should be limited to the acts complained of in the complaint and agreed to in the stipulation.

''No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right'': Constitution of Oregon, art. I, § 8.

As long as the Oregon Labor Press confines or limits its publication referring to plaintiff to the ordinary printing of its paper and makes no special display of any article concerning plaintiff and his place of business at or near his place of business it has a right to publish and sell its papers containing references to plaintiff and his business. The paper has the right to publish articles about plaintiff, and as long as it publishes such articles as other articles are published in said paper it will be within its rights. It has the right also to sell its papers on the streets without regard to plaintiff's place of business. It will be responsible to plaintiff for any abuse of that right.

■ The courts are as much subject to the Constitution of the state as is the legislature of the state. The courts should not make an order in violation of said article I, section 8, of the Constitution, though that section itself refers only to a law.

We have carefully examined the other authorities cited and relied upon by both parties but think that it would be of no benefit to either the parties or the public to analyze and discuss them in the opinion. The decree appealed from will be modified as hereinabove indicated and affirmed as to all other provisions thereof.

BEAN, J., dissenting.

KELLY, J., did not participate in this opinion.