Argued January 3; affirmed January 17, 1933

# BLUMAUER ET AL. *v.* PORTLAND MOVING PIC-TURE MACHINE OPERATORS' PROTECTIVE UNION LOCAL No. 159 ET AL.

(17 P. (2d) 1115)

*Herbert Swett* and *John W. Kaste,* both of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellants.

*B. A. Green,* of Portland, for respondents.

CAMPBELL, J.  Plaintiffs are the owners of a building known as the Capitol Theater building, located on lots 5 and 6, block 49, Portland, Oregon.  The building completely covers the two lots and extends easterly 100 feet on Morrison street and northerly 100 feet on Fourth street on the southwest corner of block 49 at Fourth and Morrison streets.  A part of the building is used as a theater and is known as the Capitol theater.  The entrance to the theater lobby is on Fourth street about 40 feet northerly from Morrison street.

The theater was at one time under lease to, and operated by, C. M. Dunn, Inc.  Some trouble arose between said lessee and the defendant, Portland Motion Picture Machine Operators' Protective Union, Local 159, by reason of certain of the motion picture operators having had their wages reduced below the scale fixed by the union.  These operators would not work for such reduced wages, and their places were supplied by non-union employees at the reduced scale.  Thereupon, the defendant, Local 159, picketed the theater.  The pickets carried a sash over one shoulder and under the other arm, on which was printed in large letters, "THE CAPITOL THEATER IS UNFAIR TO ORGANIZED LABOR," or words of similar import.  These pickets, during the time the theater would be open for business, paraded to and fro on the outer edge of the sidewalk immediately in front of the theater entrance.

C. M. Dunn, Inc., got into financial difficulties and was unable to pay its rent and finally on March 14,

1931, the owners were obliged to take over the theater. It appears that, shortly thereafter, negotiations were entered into between the new management of the theater and the defendant, Local 159.

The Portland Moving Picture Machine Operators' Protective Union, Local 159, is a labor organization of workers indicated by its name and is affiliated with the American Federation of Labor, of which the defendant, the Central Labor Council of Portland and vicinity, is the representative in Portland. This latter organization, through its officials, the president, M. Provo, and secretary, Gust Anderson, offered their good offices to bring about a settlement of the difficulties between the parties interested. The pickets were withdrawn in the latter part of April, 1931, for about three weeks, but as the parties were unable to reach a mutually satisfactory settlement the theater was again picketed in another manner. This time, the pickets wore no sash, but appeared in front of the theater for the ostensible purpose of selling copies of organized labor's official organ, "The Oregon Labor Press." They carried and displayed copies of this paper which had in large and prominent headlines, printed in full capital letters two inches high and broad in proportion, "CAPITOL AND RIVOLI ARE STILL UNFAIR." These headlines, the pickets would display and call out so loudly that the patrons inside of the theater could hear as well as those who were entering or leaving the building. It does not appear that there was any real effort to sell the papers.

Plaintiffs brought this suit to enjoin the defendants from picketing the theater in the above or any manner. After a hearing, the circuit court issued an order wherein it enjoined the defendants, and each of them,

from in any manner picketing the theater by having pickets parading up and down in front of the theater or in the immediate vicinity on Fourth street, either singly or in groups. The court further ordered:

"* * * that the defendants, and each of them, be, and they are hereby authorized and empowered to picket said Capitol theater of plaintiff's east of the property line of Fourth street on Morrison street and Alder street east of said property line, which said picket or pickets may by means of scarfs, banners, badges, coats, newspapers or other insignia apprise the public that said Capitol theater, its owners, and/or employees are unfair to organized labor and/or to any labor union represented by the defendants."

From this order and decree, plaintiffs appeal.

The only error assigned, is that the court erred in decreeing that defendants may picket the Capitol theater by stationing pickets on Alder street and Morrison street, east of the property line on Fourth street.

It is contended by appellants, that the questions in the instant case are foreclosed by the decisions of this court in *Moreland Theaters Corporation v. Portland M. P. M. O. P. Union,* 140 Or. 35 (12 P. (2d) 333); *Crouch v. Central Labor Council,* 134 Or. 612 (293 P. 729); *Greenfield v. Central Labor Council,* 104 Or. 236 (192 P. 783, 207 P. 168). Practically all that was decided in the *Moreland, etc. v. Portland, etc.* case was that section 49-901 to section 49-906, Oregon Code 1930, are constitutional when properly interpreted and applied, and when there is no immediate bona fide controversy between the employer and the employees, the court is not prohibited under the above statute from issuing an injunction, and that the facts in that particular case justified its issuance. That is, when the picketing is for unlawful purposes or conducted in an unlawful

manner to the injury of the employer's rights, when the employer has no adequate remedy at law for such injury, the picketing will be enjoined; this is also in effect, the decisions in *Crouch v. Central Labor Council* and *Greenfield v. Central Labor Council.*

■■ This court, as well as the public policy of the state, recognizes the right of employees to organize for the purpose of improving the conditions of their employment in respect to hours of labor, amount of pay, the sanitary conditions under which the work is performed, or for any lawful purpose: *Longshore Printing Co. v. Howell,* 26 Or. 527 (38 P. 547, 28 L. R. A. 464, 46 Am. St. Rep. 640); *Crouch v. Central Labor Council,* supra. This right would be of little value if they were deprived of the means of making the purpose of their organization effective. Therefore, organized labor has a right to lawfully use all lawful means to bring about reasonably desirable terms and conditions in the way of hours, pay or other conditions of employment. Organized labor has the right to present its side of a controversy to the public by all lawful means if such means may be, and are, used in a lawful manner without violence, or threats, or intimidation of the employer, his employees or the patrons of the employer's business.

"Intimidation is not limited to threats of violence or to physical injury to persons or property. It has a broader signification and there may also be a moral intimidation which is illegal. In the guise of picketing strikers may obstruct and annoy others and by insult and menacing attitude, intimidate them as effectually as by physical assault." Martin, Modern Law of Labor Union, 229, section 162.

The text seems to follow the weight of authority.

This right of presenting its side of a controversy, organized labor may exercise by lawful means, in a

lawful manner when its members have reasonable grounds to apprehend that the practices or pay of any employer will produce an injurious effect on the working conditions of employees generally, or of those in a particular trade or calling, even though there may be no direct controversy between the employer and his immediate employees.

It is not a lawful purpose for organized labor, by threats or intimidation to attempt to impose unreasonable restrictions and conditions on, or to compel the employer to breach a lawful contract. Labor cannot be affected injuriously if the employer is paying the union scale of wages and maintaining the other conditions of employment up to the standard demanded by the union.

■■ Whether picketing is lawful or unlawful, depends entirely on the facts and circumstances peculiar to each particular case, and to an extent on the manner in which it is done and the conduct of the pickets. Where the object of picketing is simply to injure the employer, and not to benefit the members of the union, or the class of employees covered by the activities of the union, or of employees generally, then such picketing would be unlawful: Organized Labor and Industrial Conflicts, Oakes, page 465, section 331; 16 R. C. L. 453, section 33.

■ In the instant case, there is a difference of opinion between the appellants and the respondents as to the real object of the picketing. The appellants claim that the wage scale could have been satisfactorily adjusted, but contend that the respondents insisted that before they would call off their pickets the appellants should unionize their theater and discharge all non-union employees. On the other hand, the respondents contend that the only object they have in mind by maintaining

the pickets, is to make appellants pay the union scale of wages regardless of whom they may hire. Counsel for respondent, in open court, made the following statement:

"I do not think that the question of discharge entered into the case, and this case would have been determined and will be determined if the Capitol theater had paid the union scale of wages and there would have been no picketing if the Capitol theater would pay the union scale of wages. If that question can be eliminated there will be no pickets out there. When they pay their scale of wages and the Capitol theater in Portland puts in a scale comparable to the union scale the pickets will be withdrawn. It will be done immediately."

Respondents are satisfied with the decree as entered. We agree with the conclusion reached by the learned trial judge, that, by banishing the pickets from the entrance to the theater and confining them to a reasonable distance therefrom and to a place where they could not annoy or intimidate the patrons, he was doing all that was necessary to protect the rights of appellants.

We have carefully examined the authorities cited by both parties. These authorities are seemingly in conflict, but we believe our holding is in accordance with sound economic logic and the weight of authority.

The decree of the circuit court will be affirmed without costs to either party.

It is so ordered.