No. 14,309.

PEOPLE *v*. HARRIS.
(91 P. [2d] 989)

Decided May 29, 1939.

Mr. JOHN A. CARROLL, Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, for the people.

Mr. PHILIP HORNBEIN, Mr. FLOYD F. MILES, for defendant in error.

Messrs. BENEDICT & PHELPS, Messrs. PERSHING, NYE, BOSWORTH & DICK, Messrs. YEAMAN, GOVE & HOFFMAN, amici curiae.

MR. JUSTICE BOCK delivered the opinion of the court.

THIS case is before us on a writ of error sued out by the people, under the provisions of section 500, chapter 48, '35 C. S. A., to review a judgment of acquittal in a criminal case.

An information in two counts was filed against George

Harris, defendant in error, under section 90, chapter 97, '35 C. S. A., charging in the first count that he "did wilfully and unlawfully loiter about and patrol the streets of the City and County of Denver, and the place of business" of the Moore Mortuary "for the purpose of wilfully and unlawfully influencing and inducing the other persons, whose names are to the District Attorney unknown, not to trade with, buy from, sell to, work for, or have business dealings" with the Moore Mortuary.

The second count charged that the defendant "did wilfully and unlawfully picket the works, buildings, and other place of business and occupation" of the Moore Mortuary, which was "then and there doing and conducting a lawful business. It charged that the picketing was done "for the purpose of wilfully and unlawfully obstructing and interfering with and injuring said lawful business, work and enterprise" of the Moore Mortuary.

The substantive law involved in these charges, section 90, supra, reads as follows: "It shall be unlawful for any person or persons to loiter about or patrol the streets, alleys, roads, highways, trails or place of business of any person, firm or corporation engaged in any lawful business, for the purpose of influencing or inducing others not to trade with, buy from, sell to, work for, or have business dealings with such person, firm or corporation, or to picket the works, mine, building or other place of business or occupation of such other person, persons, firm or corporation, for the purpose of obstructing or interfering with or injuring any lawful business, work or enterprise; provided, that nothing herein shall prevent any person from soliciting trade, custom or business for a competitive business."

Defendant pleaded not guilty. A jury was waived, and the case submitted on a stipulation of facts. Thereon defendant was adjudged not guilty and discharged.

The position of the people is supported here by amici curiae, while the attorney general joins with counsel for defendant in urging the invalidity of the statute.

Section 90, supra, was enacted by the legislature in 1905. Only one other state, Alabama, has a similar law. No litigation involving its construction has ever reached this court. Perhaps one of the reasons for this situation is that injunctive relief was the usual remedy sought in cases involving picketing in labor disputes. This approach was partially foreclosed by sections 76-87, chapter 97, '35 C. S. A., prohibiting injunctive relief under such circumstances.

█ Counsel have ably discussed the development of the social and legal problems involved. Every student of the law will readily admit that changes have occurred since the enactment of section 90, supra, relating to labor disputes. *Local Union No. 26, etc. v. City of Kokomo*, 211 Ind. 72, 5 N. E. (2d) 624; *Fenske Bros. v. Upholsterers' Union*, 358 Ill. 239, 193 N. E. 112, 97 A. L. R. 1318; *Geo. B. Wallace Co. v. International Ass'n*, 155 Ore. 652, 63 P. (2d) 1090; *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U. S. 1, 57 Sup. Ct. 615, 81 L. Ed. 893. Much statute law has since been enacted in the interest of labor and in its lawful rights to secure reasonable wage levels. It is quite universally conceded now that labor has the right to organize and to lawfully protect its economic interests. *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, *supra*. It is generally admitted that the right of collective bargaining is here to stay. That this right has created corresponding responsibilities also must be recognized. The need in our economic life of organized labor as an important factor in maintaining wage levels is generally accepted.

In *West Coast Hotel Co. v. Parrish*, 300 U. S. 379, 57 Sup. Ct. 578, 81 L. Ed. 703, the Supreme Court of the United States had before it the validity of a minimum wage law in the state of Washington. Speaking through Mr. Chief Justice Hughes, the court, in sustaining the constitutionality of this law, said (p. 399): "The exploitation of a class of workers who are in an unequal position

with respect to bargaining power and are thus relatively defenseless against the denial of a living wage is not only detrimental to their health and well being, but casts a direct burden for their support upon the community. What these workers lose in wages the taxpayers are called upon to pay. The bare cost of living must be met. * * *. The community is not bound to provide what is in effect a subsidy for unconscionable employers.''

The stipulated facts directly pertaining to this discussion are as follows:

''For the purpose of giving publicity to the fact that the Moore Mortuary, Inc., work had been placed on the unfair list, the defendant, George Harris, accompanied by Clifford Matson, Jr., both of whom are members of Local Union No. 55 of the United Brotherhood of Carpenters and Joiners of America, and Charles Williams, Frank Bryant, Merle Elliott, Clarence Seims, William Wallrath and Arthur Bentz, all of whom are members of Local Union No. 720 of the Hod Carriers and Building Construction Laborers, were directed by the Denver Building Trade Council to patrol the sidewalks adjoining the Moore Mortuary, Inc., establishment, and to peaceably picket the said construction work which was then being carried on; that the defendant and the other members of the union above named, proceeded to peacefully picket said premises by walking upon the sidewalks of East Seventeenth Avenue and on Clarkson Street adjacent to said premises in groups of two; that the defendant and each of the other persons above named, carried a sign attached to the back of their persons, in substantially the following form, and reading as follows:

'' 'This Job Unfair. Denver Building Trade Council.'

''That said picketing was carried on in the following manner:

''The defendant, George Harris, and the other persons above named, in groups of two, with said signs attached to their backs, walked from the alley-way on East Seventeenth Avenue, separating Clarkson and Emerson

Streets, westerly to the intersection of the sidewalks at East Seventeenth Avenue and Clarkson Street; thence in a southerly direction terminating at the building line of said premises, a distance of approximately one hundred feet south of the intersection of the sidewalks; that each of said groups of two persons was separated and walked at about forty-foot intervals; that neither the defendant, nor any of the other persons above named engaged in said picketing, spoke to or addressed any person or persons except to answer questions or inquiries directed to them.

"It is further stipulated that said picketing was carried on without intimidation or coercion, and the methods employed did not involve fraud, violence, breach of the peace or threat thereof, nor did said persons commit any act or acts tending thereto.

"That said picketing was maintained and carried on by the said defendant and the other persons named for the purpose of influencing and inducing other craftsmen not to work for said contractors, and to advise and inform the public and persons seeking the services of the Moore Mortuary, Inc., that the construction work being there carried on was being done in a manner and under conditions deemed unfair to Organized Labor, thereby seeking to influence and induce members of Organized Labor and persons in sympathy with the principles of the Organized Labor Movement to withhold their patronage from the said Moore Mortuary, Inc., until the matters in dispute should be satisfactorily adjusted."

It will be noted that under the stipulated facts the picketing was confined to walking on the sidewalk adjacent to the premises of the Moore Mortuary, Inc., and not on "the place of business of any person," or the "building * * * of such other person."

By the great weight of authority, peaceful picketing, so long as it does not in fact involve fraud, intimidation, breach of the peace, or coercion, has been sustained in many cases. See *Pope Motor Car Co. v. Kee-*

*gan*, 150 Fed. 148; *Karges Furniture Co. v. Amalgamated Wood Workers Local Union*, 165 Ind. 421, 430, 431, 75 N. E. 877; *Steffes v. Motion Picture Machine Operators Union*, 136 Minn. 200, 161 N. W. 524; *Root v. Anderson*, 207 S. W. 255; *Bayonne Textile Corp. v. American Federation of Silk Workers*, 116 N. J. Eq. 146, 172 Atl. 551; *Exchange Bakery & Restaurant v. Rifkin*, 245 N. Y. 260, 157 N. E. 130; *McCormick v. Union*, 13 Ohio Cir. Ct. (N. S.) 545; *Greenfield v. Central Labor Council* (Ore.), 192 Pac. 783; *Everett Waddey Co. v. Richmond Typographical Union*, 105 Va. 188, 53 S. E. 273; *Iron Molders Union v. Allis-Chalmers Co.*, 166 Fed. 45 (C. C. A. 7th); *Niles-Bement-Pond Co. v. Iron Molders Union*, 246 Fed. 851, 860; *Starr v. Laundry & Dry Cleaning Workers' Union*, 155 Ore. 634, 63 P. (2d) 1104; *Geo. B. Wallace Co. v. International Ass'n, supra; Fenske Bros. v. Upholsterers' Union, supra; Scofes v. Helmar*, 205 Ind. 596, 187 N. E. 662; *S. A. Clark Lunch Co. v. Cleveland Waiters, etc., Local*, 22 O. App. 265, 154 N. E. 362; *Great Northern Railway Co. v. Brosseau*, 286 Fed. 414; *American Steel Foundries v. Tri-City Central Trades Council*, 257 U. S. 184, 42 Sup. Ct. 72, 66 L. Ed. 189; *Senn v. Tile Layers Union*, 301 U. S. 468, 57 Sup. Ct. 857, 81 L. Ed. 1229; *Lauf v. Shinner & Co., Inc.*, 303 U. S. 323, 58 Sup. Ct. 578, 82 L. Ed. 872; *Levering & Garrigues Co. v. Morrin*, 71 F. (2d) 284, Certiorari denied, 293 U. S. 595.

▮ It is expressly stipulated in the instant case, "that said picketing was carried on without intimidation or coercion, and the methods employed did not involve fraud, violence, breach of the peace or threat thereof, nor did such persons commit any act or acts tending thereto." It clearly appears, in the light of this stipulation, that Harris was not unlawfully "obstructing or interfering with or injuring any lawful business." No legal injury of any kind resulted to any person because of his picketing activities. That the employer has the right to refuse to pay union wages and maintain union standards is conceded. Correspondingly, labor has the

right to decline to carry on any business relation with such an employer. Any loss which occurs in such economic controversies is damnum obsque injuria. *Fort v. People,* 81 Colo. 420, 256 Pac. 325; *Master Builders' Ass'n v. Domascio,* 16 Colo. App. 25, 63 Pac. 782. There is no contention here that the picketing was not for a lawful purpose, except as charged in the information.

In the case of *Geo. B. Wallace Co. v. International Ass'n, supra,* the Supreme Court of the state of Oregon discusses this phase in the following language (p. 663): "This court has long recognized the right of peaceful picketing when done for a lawful purpose. *Blumauer v. Portland M. P. O. P. Union,* 141 Or. 399 (17 P. (2d) 1115); *Moreland Theatres Corporation v. M. P. Union,* 140 Or. 35 (12 P. (2d) 333); *Crouch v. Central Labor Council,* 134 Or. 612 (293 Pac. 729, 83 A. L. R. 193); *Greenfield v. Central Labor Council,* 104 Or. 236 (192 Pac. 783, 207 Pac. 168). It is an appeal to the public and to members of the union not to patronize an employer who does not conform to the standards of organized labor relative to wages, hours and conditions of employment. The mere fact that an employer may sustain loss of business as a result of such picketing does not warrant intervention. It is damnum obsque injuria. No person has a vested right to the patronage of those who are not in accord with his standards of employment. *United Chain Theatres v. Philadelphia M. P. M. O. Union,* 50 F. (2d) 189; *S. A. Clark Lunch Co. v. Cleveland Waiters & Beverage Dispensers Local,* 22 Ohio App. 265 (154 N. E. 362). Such loss, under our social and economic system, is merely the result of a conflict of interests between capital and labor. What has been said thus far is on the assumption that violence, intimidation and coercion are foreign to peaceful picketing. No court has ever upheld the right to injure or destroy a business through a tortious act."

In the dissenting opinion of Mr. Justice Butler, in the case of *Senn v. Tile Layers Union, supra,* at p. 489, he used this language: "The right of workers, parties to

a labor dispute, to strike and picket peacefully to better their condition does not infringe any right of the employer. *American Foundries v. Tri-City Council,* 257 U. S. 184, 209. *United Mine Workers v. Coronado Coal Co.,* 259 U. S. 344, 386. *Wolff Co. v. Industrial Court,* 262 U. S. 522, 540, 541; *Dorchy v. Kansas,* 264 U. S. 286, 289.''

▇ The exercise of arbitrary power by any department of government, or agency thereof, is inconsistent with our democracy. Our guaranties against the exercise of such arbitrary power are found in the state Constitution, article II, section 35, which provides that ''No person shall be deprived of life, liberty or property, without due process of law''; and article II, section 10, that ''No law shall be passed impairing the freedom of speech * * *''; and in the federal Constitution, amendment XIV, section 1, ''that no state shall deprive any person of life, liberty or property without due process of law.''

▇ It is argued that peaceful picketing is a crime under section 90, supra. If the legislative intent requires such a construction, then the law must, within the limits of the stipulated facts, be held to be unconstitutional as being a denial of the freedom of speech. Those who seek reversal necessarily must contend that said section prohibits peaceful picketing of any kind, at any time, at any place near the employer's premises, and in any manner. If this contention is upheld, we have what amounts to an exercise of arbitrary power, in violation of the due-process-of-law provision contained in amendment XIV, supra. *Lovell v. City of Griffin,* 303 U. S. 444, 58 Sup. Ct. 666, 82 L. Ed. 949. We are not here concerned with a statute which only regulates peaceful picketing, but one which forbids it. This unqualified prohibition would, in our opinion, violate ''those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'' *Palko v. Connecticut,* 302 U. S. 319, 58 Sup. Ct. 149, 82 L. Ed. 288.

In *Senn v. Tile Layers Union, supra,* the United States Supreme Court had before it the question of the power of

a state to prohibit the granting of an injunction restraining peaceful picketing. Mr. Justice Brandeis, speaking for the court, said (p. 478) : ''Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, *for freedom of speech is guaranteed by the Federal Constitution.* The state may, in the exercise of its police power, regulate the methods and means of publicity as well as the use of public streets. If the end sought by the unions is not forbidden by the Federal Constitution the state may authorize working men to seek to attain it by combining as pickets, just as it permits capitalists and employers to combine in other ways to attain their desired economic ends.'' (Italics ours).

In *Ex parte Lyons* (Cal.), 81 P. (2d) 190, the court had before it contempt proceedings growing out of a labor dispute. Relating to the constitutional issue of freedom of speech, it had this to say. (p. 193) : ''In this state the right to peacefully picket rests upon the constitutional guaranty of the right of free speech. We cannot see how the right to peacefully picket, under the guaranty of free speech, could be confined to cases in which there exists a dispute between an employer and organized labor over hours or conditions of employment, rate of pay, unionization of employees or employment of non-union men and not extended to a dispute between a business man and any citizen or group of citizens who may differ with him on a question of business policy. The guaranty of the right of free speech is general and extends to every class or group of citizens.''

■■ As already stated, regulation is not involved in the instant case. Section 90, supra, does not specifically refer to labor disputes. Its provisions include all persons. There may be situations in which this section is applicable, but for reasons already given, it cannot apply to the facts and circumstances in this case. Section 92, chapter 97, '35 C. S. A., incorporated in the same act in which section 90 is found, provides: ''It shall be

unlawful to use force, threats, or other means of intimidation to prevent any person from engaging in any lawful occupation at any place he or she sees fit." That section was directed at what may be termed unlawful picketing. What rights are protected in peaceful picketing under the due-process-of-law provision, it is not necessary to determine. In fact, like the police power, due process of law is impossible of exact definition. In our opinion, however, section 78 (e), chapter 97, '35 C. S. A., which reads as follows: "Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof," and which is one of the acts under which injunctive relief is prohibited, includes the rights protected under due-process-of-law clause, subject, however, to reasonable legislative regulation. *Local Union No. 26, etc. v. City of Kokomo, supra; Geo. B. Wallace Co. v. International Ass'n, supra.*

The case of *Hardie-Tynes Mfg. Co. v. Cruse,* 189 Ala. 66, 66 So. 657, is cited as authority to the point that section 90, supra, forbids peaceful picketing. That undoubtedly is the effect of that case. The question of the constitutionality of the Alabama Act was there raised, and the court said, "No intimation is offered as to what provision of the Constitution is thereby offended, and we can think of none." We may assume that since no criminal offense was involved in the Hardie-Tynes case the constitutional questions presented in the instant case were not seriously considered in that litigation.

 It is contended that section 90, supra, is valid as a reasonable exercise of the police power. If this section, instead of prohibiting peaceful picketing, could be so construed as to be only a reasonable regulation thereof, the contention would be sound; but it prohibits all

peaceful picketing. Any legislative exercise under the police power which violates any right guaranteed by the national or state Constitutions is invalid. *In re Morgan,* 26 Colo. 415, 58 Pac. 1071; *Lovell v. City of Griffin, supra;* 12 C. J. 938, 939. "Freedom is the general rule, and restraint the exception." *Wolff Co. v. Court of Industrial Relations,* 262 U. S. 522, 534, 43 Sup. Ct. 630, 67 L. Ed. 1103. It cannot be successfully maintained that guaranties of freedom of speech are less important than guaranties relating to property.

The constitutionality of section 90, supra, also is challenged on the ground of uncertainty, in that there is a failure to sufficiently define standards of guilt to meet constitutional requirements. See *United States v. Reese,* 92 U. S. 214, 219, 220, 23 L. Ed. 563; *United States v. Brewer,* 139 U. S. 278, 288, 11 Sup. Ct. 538, 35 L. Ed. 190; *Todd v. United States,* 158 U. S. 278, 282, 15 Sup. Ct. 889, 39 L. Ed. 982; *United States v. Cohen Grocery Co.,* 255 U. S. 81, 89, 41 Sup. Ct. 298, 65 L. Ed. 516; *Herndon v. Lowry,* 301 U. S. 242, 263, 57 Sup. Ct. 732, 81 L. Ed. 1066; *Lanzetta v. State,* 59 Sup. Ct. 618; *People v. Mooney,* 87 Colo. 567, 290 Pac. 271. There is merit in this contention, but in view of the conclusions reached, we deem it unnecessary to decide that and other questions raised.

Whatever our individual views may be on economic controversies, such as are involved here, we cannot consent to legislative invasion of constitutional guaranties to the extent for which contention is made in this case. The line of demarcation between police power and constitutional guaranties is not always well defined. Where a law, such as section 90 here under consideration, impairs freedom of speech, as it does in view of the stipulated facts before us, we have no doubt that it constitutes an invasion of constitutional guaranties, both under the state and federal due-process-of-law clauses and the mandatory provision prohibiting the enactment of laws impairing the freedom of speech.

The judgment is affirmed.

Mr. Justice Bakke concurs specially.

Mr. Justice Francis E. Bouck not participating.

Mr. Justice Bakke specially concurring.

The facts and issues are sufficiently detailed in Mr. Justice Bock's opinion. They require no repetition or reiteration.

While not particularly disagreeing with the majority opinion, or the conclusion reached therein, I think the case is one of the "mountain laboring and bringing forth a mouse." The mouse of unconstitutionality is probably there, but I do not like its color. It is too gray, and not recognizable in the dark. Everyone knows, and the majority opinion admits, that we are going through an experimental period in labor legislation, attended with litigation, and we might just as well have selected a white mouse, the kind ordinarily used in experimentation, because the results are more easily ascertainable under the microscope of critical analysis.

In any event, I choose to rely for the sustaining of the judgment on the assignment of error based upon the trial court's holding that part of the anti-picketing law (1905 act) was impliedly repealed by chapter 59, Session Laws 1933. That such was the case, I shall proceed to demonstrate.

"If a criminal act [in our case, one dealing with heretofore called criminal conduct] deals with the same subject as a prior act and is inconsistent with and repugnant to the prior act, the latter will be repealed by implication to the extent of the inconsistency." 25 R. C. L. 930, §179.

Section 1 of the 1905 act (S. L. '35, p. 160; '35 C. S. A., v. 3, c. 97, §90, supra, C. L. §4162) is clearly inconsistent with and repugnant to paragraph (e) section 78, chapter 97, '35 C. S. A., S. L. '33, p. 406, §3. Section 78 reads, in part, as follows: "No court, nor any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction which in

specific or general terms prohibits any person or persons from doing, whether singly or in concert, any of the following acts: * * *

"(e) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof."

Certainly it cannot be urged with any merit that the announced public policy of the state, which will not allow injunctive relief against such conduct, would permit the same result to be achieved by having a supposed violater arrested and jailed. The repugnancy is so obvious as to be inescapable. Section (e) supra, cannot be construed in any way, except as "an indication that the sovereign power no longer desires the former offense [picketing in a labor dispute] to be punished or regarded as criminal." 14 Am. Jur. 777.

The Supreme Court of Wisconsin in its opinion in the *American Furniture Co. v. Chauffeurs etc., Local,* 222 Wis. 338, 355, 268 N. W. 250, speaking of the conclusion of the report of the house committee on the Norris-La-Guardia Act, said: "* * * since the strike is a lawful instrument [as is the picket—in the sense it may not be enjoined—under the 1933 act] in the struggle between employer and employee, it would be *hypocrisy* to concede these rights and then to prohibit any effective exercise of them by labor." (In our case by a criminal statute.) Italics are mine.

It is urged here, and some courts have held, that there can be no such thing as peaceful picketing, that it is per se a species of coercion and intimidation. That doctrine has long since been discarded. *Wallace Co. v. International Ass'n,* 155 Ore. 652, 63 P. (2d) 1090. The court in the latter case sustained the constitutionality of the Ore-

gon anti-injunction statute regarding labor disputes. See, also, *Lisse v. Local Union,* 2 Cal. (2d) 312, 41 P. (2d) 314.

Section (e) supra, is identical with the one contained in the Wisconsin Labor Code and which was passed upon by the United States Supreme Court in the case of *Senn v. Tile Layers Union,* 301 U. S. 468, 57 Sup. Ct. 857, 81 L. Ed. 1229. While it is true that the Wisconsin Code contains a specific provision to the effect that "peaceful picketing or patrolling, whether engaged in singly or in numbers, shall be legal," and our act (sections 76-87, chapter 97, '35 C. S. A.; S. L. '33, pp. 404, 414, §§1, 12), does not contain such a provision; nevertheless, section (e) is in itself a sufficient definition of lawful picketing, if the language in the 1905 act is a sufficient definition of unlawful picketing in a labor dispute. It therefore follows that the omission from the 1933 Colorado act of the quoted words which are found in the Wisconsin act is immaterial. The same is true in regard to the titles, because both the 1905 act and the 1933 act deal with conduct of people in labor disputes and are found in chapter 97, '35 C. S. A. dealing with labor.

At the time the Senn case arose in Wisconsin, there was a criminal statute in that state to the effect that "Any two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars." Wisconsin Statutes 1937, p. 2818, §343.681.

It was held by the attorney general of that state that picketing of a retail establishment was a violation of the section. 24 Atty. Gen. 613. (Predicated on non-existence of a labor dispute).

The Wisconsin Labor Code (considered by the U. S. Supreme Court in the Senn case, supra, says nothing about a repeal of the above §343.681, hence there is a situation identical with that in Colorado, except that in our case the legality of picketing in a labor dispute is raised in a criminal prosecution, while in the Senn case it arose on an application for injunctive relief. While neither the Supreme Court of Wisconsin in the American Furniture Company case, nor the Supreme Court of the United States mentioned any repeal of said section 343.681 supra, for the apparent reason that a labor dispute was involved, it was held unequivocally that peaceful picketing in such a dispute in Wisconsin was legal.

My conclusion, therefore, is that section 1 of the 1905 act was impliedly repealed by the 1933 act, to the extent that peaceful picketing in a labor dispute is no longer a crime. I agree with Justice Brandeis, where he says in the Senn case: "Exercising its police power Wisconsin [Colorado] has declared that in a labor dispute peaceful picketing and truthful publicity are means legal for unions." (p. 482) See, also, *People v. Spear* (Cal.), 89 P. (2d) 445.