(No. 21995.—

GRAHAM P. HUNT, Receiver, Appellee, *vs.* THE ROSEN-BAUM GRAIN CORPORATION, Appellant.

*Opinion filed February 23, 1934—Rehearing denied April 5, 1934.*

HERRICK and FARTHING, JJ., dissenting.

LEVINSON, BECKER, GILBERT, PEEBLES & SWIREN, (DON M. PEEBLES, MAX SWIREN, and HAROLD M. KEELE, of counsel,) for appellant.

CASSELS, POTTER & BENTLEY, and TAFT, STETTINIUS & HOLLISTER, (KENNETH B. HAWKINS, CHARLES P. TAFT II, and EDWARD P. MOULINIER, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Appellee, Graham P. Hunt, as receiver of Roberts & Hall, a brokerage firm of Cincinnati, Ohio, recovered a judgment in the superior court of Cook county against the Rosenbaum Grain Corporation, appellant, for $12,798.36. The action was based on the receipt and alleged conversion by appellant of the proceeds of certain dividend checks and stock dividends claimed by appellee. From that judgment appellant has prosecuted an appeal to this court. One of

the issues involved is the constitutionality of the statute regulating jury trials.

Roberts & Hall was a co-partnership engaged in the brokerage business for many years. During its business career it held memberships in the New York Stock Exchange and other like organizations. The brokerage firm of Dean, Onativia & Co. acted as its New York correspondent until April 6, 1925. On that date Roberts & Hall terminated its business relations with Dean, Onativia & Co. With the exception of a few minor items, which were later adjusted, all the securities held by the correspondent were either sold or delivered under instructions from Roberts & Hall and all money owing to the correspondent was paid, balancing both the securities and money accounts. The securities account included shares of stock in eight corporations, on which the dividends in controversy were later paid to appellant. On the orders of Roberts & Hall those stocks were delivered by the correspondent to various banks as collateral on loans to Roberts & Hall. The certificates were in the firm name of the correspondent and endorsed by it in blank.

Appellee was appointed receiver for Roberts & Hall in December, 1929. He found one of the stock certificates in the firm's safety deposit box. Certificates representing the remainder of the stock were returned to him by the banks which held them as collateral. It is stipulated that all of said stocks had been purchased by Roberts & Hall solely as broker for its customers and not as principal. In December, 1927, involuntary bankruptcy proceedings were instituted against Dean, Onativia & Co., resulting during the same month in a composition with its creditors. In connection with the composition appellant acquired all the assets of the firm. The shares of stock in the eight corporations on which the dividends in controversy were paid to appellant were not a part of the assets of Dean, Onativia & Co. and were not in any way involved in the bankruptcy

proceeding or the composition with creditors. Consequently appellant acquired no title thereto.

E. F. Rosenbaum was president and E. S. Rosenbaum vice-president of the appellant corporation. The firm of Dean, Onativia & Co. consisted of ten partners. Among them were E. F. Rosenbaum, E. S. Rosenbaum and Joseph Rosenbaum, the latter's son. Joseph Rosenbaum was the liquidator of the partnership. After the composition he received during the years 1928 and 1929 the dividend checks and stock dividends in controversy. They were issued to Dean, Onativia & Co. They were endorsed by Joseph Rosenbaum and then delivered to appellant. The checks contain no memorandum to show the numbers of the stock certificates upon which the cash dividends were paid. The aggregate amount of the checks was $10,209.15. The stock dividend certificates were for twenty shares of the Owens Bottle Company issued January 1, 1928, and five shares of the same company issued January 2, 1929. After the composition in bankruptcy, Joseph Rosenbaum, as such liquidating partner, filed with the corporations which had issued the original stock certificates, affidavits that they had been lost, stolen or destroyed, and new certificates in the name of the original holder were issued and delivered to him. The certificates were subsequently disposed of by appellant. Testimony was introduced showing the market value of these shares on January 1, 1928, and January 2, 1929, respectively.

Appellant contends that the trial court erred in refusing its application for a jury trial. Section 33 of the Fees and Salaries act (Cahill's Stat. 1931, par. 47,) provides that in counties of the third class (in certain actions) a jury fee of eight dollars shall be paid by the plaintiff at the time of commencing suit, and if not paid by the plaintiff it shall be paid by the defendant at the time of entering his appearance. If such fee be not paid by either party no jury shall be called in the action and the same shall be

tried by the court without a jury. It is said that provision contravenes section 22 of article 4 and section 29 of article 6 of the constitution of this State and is void. Section 22 of article 4 provides: "The General Assembly shall not pass local or special laws * * * regulating the practice in courts of justice." Section 29 of article 6 provides: "All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform."

The constitution is not to be regarded as a grant of power to the legislative department but as a limitation upon its powers. The General Assembly may legislate upon any subject not withdrawn from its authority by the constitution. (*Taylorville Sanitary District* v. *Winslow,* 317 Ill. 25; *Harris* v. *Board of Supervisors,* 105 id. 445.) The presumptions are all in favor of the constitutionality of a statute and all doubts are to be resolved in favor of its validity. *Mathews* v. *City of Chicago,* 342 Ill. 120; *People* v. *Gaulter,* 149 id. 39; *People* v. *Onahan,* 170 id. 449.

It has been held that a statutory provision requiring a demand for a jury trial and the advancing of the jury fee is not an unconstitutional restriction of the right of trial by jury. (*Williams* v. *Gottschalk,* 231 Ill. 175; *Morrison Hotel Co.* v. *Kirsner,* 245 id. 431.) Those cases arose under the Municipal Court act, and were decided without reference to the objection made in this case that section 33 is a local or special law. Whether a law is general, local or special does not depend upon the number of things within the scope of its operation. To be general it is not necessary that an act operates in every place or upon every person in the State, but if every place or person brought within the relations or circumstances provided for is affected by the law the act is general. An act is not

local or special merely because it operates in but one place or upon a particular class of persons or things, provided there is a reasonable basis for the legislative classification. A law may be general notwithstanding the fact that it may operate in only a single place where the conditions necessary to its operation exist. *People* v. *City of Chicago,* 349 Ill. 304; *Mathews* v. *City of Chicago, supra; People* v. *Borgerson,* 335 Ill. 136.

The objection urged against the provision of section 33 of the Fees and Salaries act is, that it applies only to Cook county and discriminates against the inhabitants of that county by requiring a demand for a jury and a deposit of the jury fee when they are not required of the inhabitants of any other part of the State. The population of Cook county is approximately four million. The volume of business in its circuit and superior courts is so large that it requires the services of forty-eight judges elected from that county and the assistance of numerous outside judges. It has long been the practice in Cook county to classify causes for trial and place them either on the jury calendar or on the non-jury list. This is not only a matter of convenience for the courts but is a necessity, in order that business may be dispatched with a degree of promptness and orderly system. The situation demonstrates the propriety of providing a method by which the courts of that county may be advised in advance of the trial whether or not the cause is to be heard by a jury. Section 33 makes that provision. It is general in its terms and in its operation upon all persons in this State in like situation. It is limited in its application to counties of the third class. The validity of the classification of counties according to population is admitted. The classification thus created has a reasonable relation to the purposes and objects of the legislation and is based upon a rational difference of situations and conditions found in counties of 500,000 or more inhabitants. What was said in *People* v. *City of Chicago,*

*supra,* concerning traffic and transportation questions is applicable here. We must recognize that court conditions in very populous counties require special consideration and treatment. The act before us is none the less general merely because at present it is applicable only to the conditions now existing in one county. *Martens* v. *Brady,* 264 Ill. 178.

There is another reason why the statute does not violate said provisions of the constitution. In prescribing limitations relative to courts the framers of the constitution made no mention of juries. Neither article 4 nor article 6 makes the jury a part of any court created or authorized by the constitution. A court is fully organized and competent for the transaction of business without the presence of a jury. (*People* v. *Fisher,* 340 Ill. 250; *City of Moline* v. *Chicago, Burlington and Quincy Railroad Co.* 262 id. 52; *Patton* v. *United States,* 281 U. S. 276.) The definition of a court does not include a jury as necessary to its functions. (*City of Moline* v. *Chicago, Burlington and Quincy Railroad Co. supra.*) The limitations prescribed by articles 4 and 6 of the constitution apply, therefore, to courts and not to the right of trial by jury.

The words "all laws relating to courts shall be general and of uniform operation," as employed in section 29 of article 6, are limited by the words which follow, requiring that "the organization, jurisdiction, powers, proceedings and practice * * * and the force and effect of the process, judgments and decrees * * * shall be uniform." Obviously, the question here does not relate to the organization, jurisdiction or powers of the court nor to process, judgments or decrees. It relates to the constitutional provision relating to "proceedings and practice" of the court. The word "procedure" includes in its meaning whatever is embraced by the three technical terms—pleading, evidence and practice. Practice, in this sense, means those legal rules which direct the course of proceedings to bring parties into court and the course of the court after they

are brought in. (*People* v. *Clark,* 283 Ill. 221.) The word "practice" is used as meaning that which regulates the formal steps in an action or other judicial proceeding. Bouvier's definition of "practice" is, "the form, manner and order of conducting and carrying on suits or prosecutions in the courts through their various stages, according to the principles of law and rules laid down by the respective courts." (*Therens* v. *Therens,* 267 Ill. 592; *Fleischman* v. *Walker,* 91 id. 318.) In *People* v. *Onahan, supra,* it was held that the act providing for preparation of the jury list and selection of grand and petit jurors therefrom by jury commissioners in counties of more than 100,000 population does not relate to or affect the proceedings or practice of the court and does not violate either section of the constitution in controversy. The statute under consideration does not attempt to provide the form, manner or order in which a suit shall be conducted or in any manner to direct the course of the court. It does not regulate any formal step in an action. It relates solely to the litigant and his constitutional right of trial by jury, by providing a method for the exercise of his right.

The appearance of appellant filed March 7, 1932, made a demand for a jury trial but the fee was not paid. The clerk, following the statute, placed the cause on the non-jury calendar. On February 23, 1933, almost a year after the date of the appearance, appellant filed a motion for an order directing the clerk to accept a jury fee of eight dollars and tendered it in open court. No reasonable excuse is shown for the failure to pay the jury fee at the time the statute provides. The court properly denied the motion.

We will now consider the case on the merits. The amended declaration avers that the stock and dividends in controversy belonged to Roberts & Hall and to appellee as receiver. It is appellee's position that the stock was purchased by Roberts & Hall on margin for its customers and the relation between them was that of pledgor and pledgee.

Appellant insists there is no testimony to show whether the original stock was purchased for cash or on margin. It was issued in the name of the New York correspondent and was afterward pledged to banks on loans of Roberts & Hall. It was carried in this manner for years and was in that condition when the receiver was appointed. No delivery was made to a customer until he paid for the stock. The whole course of the transactions shows plainly that the deals of Roberts & Hall with its customers were margin transactions. The law is that the relation between a customer purchasing stock on margin and the broker is that of pledgor and pledgee. (*Markham* v. *Jaudon,* 41 N. Y. 325; *Richardson* v. *Shaw,* 209 U. S. 365; *Brewster* v. *VanLiew,* 119 Ill. 554.) In the absence of a contract to the contrary, the broker, as pledgee, is entitled to the dividends on pledged stock. (*Meredith Village Savings Bank* v. *Marshall,* 68 N. H. 417, 44 Atl. 526; *McCrea* v. *Yule,* 68 N. J. L. 465, 53 Atl. 210; *Union Trust Co.* v. *Hasseltine,* 200 Mass. 414, 86 N. E. 777.) Appellee's interest in the stock and dividends is sufficient to support the action.

It is insisted by appellant that the dividend checks and the certificates for stock dividends were negotiable instruments received by it as a holder in due course without notice of any adverse claim. Appellant's president and vice-president were partners in the Dean, Onativia & Co. firm. They acted in behalf of both the corporation and the co-partnership. Knowledge of what the assets of the co-partnership consisted is imputed to them. Whatever notice they had was notice to the corporation. (*Simmons* v. *Roseland Security Vault Co.* 331 Ill. 563; *Easter* v. *Farmers' Nat. Bank,* 57 id. 215.) Appellant is in no position to claim that the dividends were acquired by it as a holder in due course.

The testimony shows that appellant appropriated the proceeds of the checks and disposed of the stock certificates

without right or authority. This amounts to a wrongful conversion, and a demand and refusal were unnecessary before bringing suit. *Mead* v. *Thompson,* 78 Ill. 62; *Bruner* v. *Dyball,* 42 id. 34; *Gibbs* v. *Jones,* 46 id. 319.

The only objection interposed to the testimony relative to the market value of the stock was that no demand was made on the dates mentioned. The proof was sufficient to show the market value on the dates the stock was issued, and appellant could show subsequent depreciation, if any, as a matter of defense. It made no effort to do so.

We see no reason for disturbing the judgment, and it is affirmed.

*Judgment affirmed.*

Mr. Justice Farthing, dissenting:

I cannot agree with that part of the decision in this case which holds constitutional the act requiring the payment of jury fees in advance in Cook county. I agree with the result on the merits of the case, but a different conclusion as to the constitutional question would have made a decision on the merits unnecessary. In my opinion the section of the statute which requires the payment of a fee of any amount before either party is entitled to a jury trial is unconstitutional. First, there is no reasonable basis for placing the county of Cook in a separate and distinct class with reference to the demand for a jury fee and payment thereof; and second, this provision violates section 29 of article 6 of the constitution, which requires uniformity as to laws regulating the practice and procedure in courts of record throughout this State. (*Phillips* v. *Quick,* 63 Ill. 445; *Taylor* v. *Smith,* 64 id. 445.) The section referred to provides: "All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform." Among other things,

section 22 of article 4 of the constitution provides: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, * * * regulating the practice in courts of justice." "Practice," as defined in *Fleischman* v. *Walker*, 91 Ill. 318, and *Therens* v. *Therens*, 267 id. 592, in my opinion would include the section of the statute which requires payment of jury fees in advance to obtain a jury trial. Section 12 of article 10 of the constitution only authorizes the General Assembly to create three classes of counties, according to their population, for the purpose of regulating the fees according to the class. No specific authority is given to the General Assembly to require payment of fees to an officer in advance in one class of counties and at a different time to the same officer in other counties. I do not believe that such power can be implied. The right to classify counties by population, furthermore, would not remove the objection that courts of similar or equal jurisdiction are established in all the counties and they must have uniform practice. If the practice is to be uniform the laws affecting it must be uniform and must not be local. This point has not been decided in our State, but the courts of Ohio and Colorado have passed upon the question under similar provisions of their constitutions.

In *Pitkin County* v. *First Nat. Bank*, 24 Colo. 124, the Colorado Supreme Court adopted the opinion of the court of appeals and held unconstitutional the section of a Colorado statute requiring jury fees to be advanced in the second, third and fourth-class counties but not in counties of the first class. The Colorado constitution provided: "All laws relating to courts shall be general and of uniform operation throughout the State; and the organization, jurisdiction, powers, proceedings and practice of all the courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments, and decrees of such courts severally, shall be uni-

form." The court said: "The meaning of this constitutional provision is apparent upon its face. Every law affecting the manner in which justice shall be administered in courts of a given class must apply equally to all of such courts and their power shall be the same. All county courts in the State belong to the same class. By the terms of section 9 conditions are imposed in some of these courts upon the right of a litigant to have his cause tried by a jury which are not imposed in others. In counties of the first class the court is given the power to order a jury in a civil action without the advancement of their fees; in all other counties such power is withheld. The language of the constitution upon the subject is unequivocal and mandatory, and section 9 is in direct conflict with its provisions." But it is here contended that in the case of the Illinois statute there is a reasonable basis for the classification, and that therefore the law is general and not local or special.

In *Silberman* v. *Hay*, 53 N. E. 258, the Supreme Court of Ohio said: "We entertain no doubt of the invalidity of this law. It is true that there is an attempt to give it the character of a general one by making it applicable to all counties which now contain or which may contain a city of the second grade of the first class, but if its subject matter is not a proper subject of local legislation this attempt to give the form of a general law can be of no avail. It is manifestly a local law, intended to apply to Cuyahoga county, and can apply to no other. The constitution (art. 2, sec. 26,) requires that all laws of a general nature shall be uniform in their operation throughout the State, and it is well settled that the general nature of a law must be determined by its subject matter. If this be general the law must be general, but if the subject matter be of a local nature a local law applicable to the subject matter may be enacted. But as to the nature of the subject matter the legislature is not the exclusive judge. If it were other-

wise, then this important provision of the constitution would be little more than directory instead of mandatory, as it undoubtedly is. * * * No answer suggests itself to this question that would not also permit of a difference in the law of procedure, or of a variety of many other subjects of legislation that have heretofore been universally regarded as of a general nature. Undoubtedly there is more litigation in a large county like Cuyahoga than in some other, but this difference can be, and has been, provided for by increasing the judicial force of the subdivision in which the county is situated." The statute under consideration by the Supreme Court of Ohio provided that in counties containing a city of the second grade of the first class, a litigant, in order to obtain a jury trial, must file a demand therefor at least five days before the first day of the term of court and at the same time deposit with the clerk a jury fee of five dollars. Cuyahoga county, containing the city of Cleveland, was the only such county in the State.

The question of lack of uniformity was not raised in the cases of *Williams* v. *Gottschalk,* 231 Ill. 175, *Simon* v. *Reilly,* 321 id. 431, *Morrison Hotel Co.* v. *Kirsner,* 245 id. 431, *Morton* v. *Pusey,* 237 id. 26, or *Lassers* v. *North-German Lloyd Steamship Co.* 244 id. 570. These cases are not in point. They deal with questions arising out of special statutory regulations of procedure authorized for the municipal court of Chicago. That court, and the special rules and statutes governing its practice and procedure, were authorized by the amendment to the constitution passed in 1904. (Const. art. 4, sec. 34.) Hiram T. Gilbert, in his work entitled, "The Municipal Court of Chicago," says that because of the uniformity provisions of the constitution of Illinois it was necessary to obtain the adoption of the 1904 amendment to the constitution in order to institute special, as distinguished from uniform, practice in the municipal court of Chicago; that by sec-

tion 22 of article 4 the General Assembly was prohibited from passing local or special laws regulating the practice of courts of justice, regulating the jurisdiction and duties of justices of the peace, police magistrates and constables, and providing for changes of venue in civil and criminal cases or summoning and impaneling grand or petit jurors. By section 29 of article 6 it was provided that all laws relating to courts should be general and of uniform operation, and that the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts severally, should be uniform. No law, therefore, affecting the jurisdiction or practice of the courts of Cook county or of the justices of the peace of the city of Chicago could be adopted unless its provisions were applicable to the courts of record and justices of the peace throughout the State.

Section 22 of article 4 appears in the constitution as a general limitation of the power of the legislature to pass local or special laws. In addition, section 29 of article 6 of our constitution deals with the powers of the courts, and can be said to show an intention to make certain that the legislature shall not regulate the practice and procedure in the courts of this State with any other but general laws. This precludes the idea that the legislature can classify the counties and make different rules of procedure for each class. The courts of Colorado and Ohio have reached a sound conclusion. The Colorado court discussed a provision similar to section 29 of article 6, and said that a requirement that jury fees must be advanced in three out of four classes of counties was unconstitutional as a special law regulating rules of practice. The Ohio court discussed an analogous situation and found that there was no reasonable basis for classification, and for that reason the statute contravened the general uniformity clause of the Ohio constitution.

When the municipal court of Chicago was created, the necessities which the case presented were met by a constitutional amendment. I am therefore of the opinion that the conclusion is inescapable that the section requiring payment of jury fees in advance in order to obtain a jury trial is unconstitutional.

Mr. JUSTICE HERRICK concurs in this dissent.