(No. 22470.—

FENSKE BROS. INC., *et al.* Appellees, *vs.* THE UPHOLSTERERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL No. 18, *et al.* Appellants.

*Opinion filed October 24, 1934—Rehearing denied Dec. 11, 1934.*

DeYoung, J., dissenting.

THOMAS D. NASH, MICHAEL J. AHERN, and MARTIN J. McNALLY, for appellants.

JACOBSON, MERRICK, NIERMAN & SILBERT, (LEWIS F. JACOBSON, and DAVID SILBERT, of counsel,) for appellees.

FYFFE & CLARKE, and OTTO A. JABUREK, *amici curiæ.*

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county granting an injunction in a labor controversy. Fenske Bros. (Inc.), and eleven other corporations engaged in the business of manufacturing furniture in the city of Chicago, filed a bill for an injunction against the Upholsterers International Union of North America, Locals Nos. 18 and 112, and certain persons as officers, agents and members of the union and as individuals, together with unknown defendants. An answer to the bill was filed. By stipulation the bill, with its exhibits and the answer, were considered as evidence. The cause was heard upon the pleadings and exhibits, and the decree appealed from was entered in accordance with the prayer of the bill.

The controversy centers about the provisions of section 1 of "An act relating to disputes concerning terms and conditions of employment," approved June 19, 1925, (Cahill's Stat. 1933, chap. 22, par. 58, p. 229,) commonly known as the Anti-Injunction law. That section provides: "No restraining order or injunction shall be granted by any court of this State, or by a judge or the judges thereof in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from

ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do."

The bill alleges that no dispute existed concerning terms and conditions of employment, but that defendants demanded that complainants operate their business upon a "closed shop basis" and sign an agreement to employ none but members of the local union; that the demand was accompanied by a statement that a refusal would result in a strike carried on in a manner that would force complainants to sign the agreement or cease business; that upon complainants' refusal to execute such agreement defendants called strikes in each of complainants' plants and thenceforth carried on a system of picketing, accompanied by threats, intimidation, vile epithets, bodily assaults and injuries to property, detailed in the bill and supported by affidavits attached as exhibits; that defendants for their justification pretend to rely upon the Anti-Injunction law, and that said law is unconstitutional for the reasons set forth in the bill, which will be hereinafter discussed. Attached to the bill are ten petitions signed by numerous employees of complainants asking protection from picketing, and stating that they do not wish to be solicited to join any union or other organization. The prayer of the bill is for an order restraining defendants from interfering in any manner with the business of complainants, and, in varying phraseology, from requesting, soliciting, inducing or compelling any employee to leave, or any prospective

employee not to enter, the employment of complainants, and from picketing the premises of complainants, the homes of employees or the way to and from work.

The answer alleges a dispute as to wages, terms and conditions of employment, and that the strike was called only to compel complainants to accede to the demands of defendants. It admits substantially all the other material allegations of the bill except with respect to the acts of violence charged. As to these, it admits that such acts of violence were committed by union members and sympathizers but alleges that they acted upon their own initiative and not otherwise, and denies that defendants rely upon the Anti-Injunction law in justification of such acts. It admits peaceable picketing of the several plants of complainants, and alleges that defendants in so doing rely upon the Anti-Injunction law and denies that said law is unconstitutional. It admits that an injunction should be granted to restrain unlawful acts against complainants, but alleges that defendants should not be restrained from doing any of the things specified in section 1 of the Anti-Injunction law, and that the order should so provide.

The decree finds that a dispute concerning terms and conditions of employment exists between those of defendants who were formerly employees of complainants or some of them. It restrains defendants from in any manner interfering with the business of complainants or their agents or employees in its operation; from maintaining pickets; from watching or spying upon complainants' places of business and their employees; from assaulting or intimidating employees or addressing them with opprobrious names; from congregating about, patrolling or gathering in groups at or near the places of business of complainants; from entering such places; from following employees; from instituting or maintaining any boycott against complainants; from carrying signs or placards announcing the strike and stating that complainants are not employing

union labor, and from sending circulars to their customers. The decree finds that the provisions suggested in the answer should not be incorporated therein for the reason that the Anti-Injunction law is unconstitutional, and in detail enjoins the doing of any of the things against which the act forbids the granting of an injunction.

The errors assigned are that the court erred in holding the Anti-Injunction law unconstitutional and in enjoining the performance of any of the things sanctioned by section 1 of the act. Appellees suggest that appellants have waived the assignments of error by admitting that acts of violence were committed, and that the law, if construed to apply to such acts, would be unconstitutional. They further suggest that the question of the constitutionality of the statute is immaterial, because a court of review will not concern itself with reasons given in a decree if the ultimate decision is correct and sustained by the record. That proposition correctly states a general principle of law but it does not apply in this case. The validity of the act was specifically challenged by the bill. The relief prayed embraces not only the restraint of violence, threats and intimidation, but also the requesting or soliciting of employees to quit work and of others not to enter the employment of complainants. The decree is responsive to both the challenge and the prayer of the bill. The alleged invalidity of the statute is the only reason assigned by the chancellor for enjoining peaceful acts and persuasion. The admissions of appellants furnish no sufficient reason for holding the statute unconstitutional and do not operate as a waiver of the errors assigned.

Appellees contend that the Anti-Injunction law is unconstitutional as contravening the due process and equal rights clauses of the Federal constitution and the following provisions of the constitution of this State: The due process clause; section 19 of article 2, which provides that every person ought to find a certain remedy for all in-

juries and wrong suffered; article 3, which divides the powers of government into three departments and prohibits the exercise of the powers of one department by any other department; section 12 of article 6, which provides that circuit courts shall have original jurisdiction of all causes in law and equity; section 22 of article 4, which prohibits the passage of local or special laws and the granting of special privileges and immunities; and section 13 of article 4, which provides that no act shall embrace more than one subject, which shall be expressed in its title. No question arises on this record as to the effect of picketing accompanied by acts of violence, and it is conceded that picketing so accompanied is unlawful.

The statute does not in express terms declare the acts lawful which may not be restrained by injunctive process, but it is apparent from the context of the act that the legislative intent was to permit them to be done, otherwise it would follow that the legislature attempted to authorize the doing of acts which it recognized were unlawful. Such a construction of the statute leads to an absurd consequence and is to be avoided. Statutes are to be interpreted according to their intent and meaning. (*Condon* v. *City of Chicago,* 249 Ill. 596; *Canal Comrs.* v. *Sanitary District,* 184 id. 597.) Our conclusion is that the legislature intended to legalize the acts mentioned in the statute. *People* v. *City of Chicago,* 152 Ill. 546.

It is claimed that this court is committed to the doctrine that peaceable picketing and peaceable persuasion are unlawful. (*O'Brien* v. *People,* 216 Ill. 354; *Franklin Union* v. *People,* 220 id. 355; *Barnes & Co.* v. *Typographical Union,* 232 id. 424; *Wilson* v. *Hey,* 232 id. 389; *Kemp* v. *Division No. 241,* 255 id. 213; *Anderson & Lind Manf. Co.* v. *Carpenters' Council,* 308 id. 488.) Each of the cases above cited was decided before there was any legislation in this State upon the questions here involved. The decree in this case is based on the chancellor's holding

that the statute is invalid, his theory being that picketing, although peaceable, is unlawful and courts of equity have the power to restrain it.

In the *Franklin Union case* practically the same questions were involved as in the *O'Brien case*. In each of them unlawful acts of violence had been committed and an injunction restraining such acts had been issued. The only questions there involved were whether or not the injunction had been violated and what punishment should be inflicted. We have held that what was said in those cases relative to the right to strike was dictum. (*Kemp* v. *Division No. 241, supra.*) However, the expressions concerning the relative rights of employer and employee are not applicable here for another reason. The law is, that if the primary purpose is a malevolent one to injure the employer or his business the object is unlawful, whether it is accomplished by mere persuasion or by physical violence, (*Barnes & Co.* v. *Typographical Union, supra,*) but where the primary object of the combination is to further the interests of the organization and improve and better the conditions of its members, whatever injury may follow to others is merely incidental. (*Kemp* v. *Division No. 241, supra.*) The holding in the *O'Brien case* is predicated upon a showing of a malicious intent to injure the employer's business, coupled with threats, intimidation and violence. In the *Franklin Union case* it appeared that the defendants agreed together that by calling a strike, and by force, threats, intimidation and picketing, they would prevent the employment of other persons. It was held that the undertaking was unlawful, and that to follow a person, to spy after him, to stop him and threaten him, to put him in fear, to intimidate or to coerce him, are alike unlawful. There is no showing or finding in the case at bar that the primary object of the strike was a malicious intent to injure the employers, and obviously the other matters discussed in the opinion are unrelated to the issues here. The

*Barnes & Co. case* was a bill for an injunction to restrain the defendants from interfering with the business of complainants or with their employees and from picketing complainants' premises. The injunction sought was against acts similar to those enjoined in the *O'Brien case* and the *Franklin Union case*. A demurrer admitted the existence of the facts stated in the bill. We held that the whole scheme was to injure the complainants for the purpose of compelling them to yield to the demands of the union and that the object of the defendants as set forth in the bill was illegal. We recognized the right of laborers to combine for the purpose of obtaining lawful benefits for themselves and held that argument and persuasion are lawful if not directed to the accomplishment of an illegal and unlawful purpose. We also held that the law gives no sanction to combinations, either of employers or employees, which have for their immediate purpose the injury of another.

*Beck* v. *Railway Teamsters' Protective Union*, 118 Mich. 497, and *Vegelahn* v. *Guntner*, 167 Mass. 92, are cited in the *Franklin Union case* and the *Barnes & Co. case*. In the Michigan case, aggressive, filthy and abusive language was used to teamster employees and violence was threatened to them and to customers. In the opinion it is said: "It will not do to say that these pickets are thrown out for the purpose of peaceful argument and persuasion. They are intended to intimidate and coerce." Yet it was held that laborers may use persuasion to induce men to join their organization or to refuse to work except for an established wage; that they may present their cause to the public in newspapers or circulars in a peaceable way, with no attempt at coercion; that if the effect in such case is ruin to the employer it is *damnum absque injuria,* for the laborers have only exercised their constitutional rights, and that the law does not permit either party to use force, violence, threats, intimidation or coercion. In the Massachu-

setts case a patrol was maintained in combination with social pressure, threats of personal injury, and persuasion to break lawful contracts. The court held that it was thus one means of intimidation and was unlawful, and that intimidation is not limited to threats of violence but there may be a moral intimidation, which is illegal.

*Wilson* v. *Hey, supra,* was a boycott case. It was there held that the giving of notices that a certain person is on the "unfair list" is unlawful if such notices excite the fear and reasonable apprehension of the recipients that their own business will be injured unless they break off business relations with that person. We said that laborers may organize for the purpose of promoting their common welfare by lawful means; that they may refuse to work for any particular employer, and may obtain employment for their members by solicitation and promises of support in trade and otherwise, if the proceeding is by lawful and peaceable means. In the *Kemp case* an injunction was sought to restrain a labor union from attempting to procure by means of threats the discharge of certain non-union employees. While the issues were not the same as in the case at bar, we there reiterated the doctrine that where the object of the strike is illegal any act in furtherance of the strike is also illegal, but that a strike may be lawfully conducted if the primary object is to further the interests of the organization and improve and better the condition of its members. In the *Anderson & Lind Manf. Co. case* the defendants exercised coercive pressure upon customers, active and prospective, in order to cause them to withhold or withdraw patronage through fear of loss or damage to themselves. We held that coercion may be accomplished without actual threats or violence as effectively as with such threats and that such actions were unlawful.

None of the cases cited hold that peaceable picketing or peaceable persuasion is *per se* unlawful. The most that can be said of them is that we have given sanction to the

doctrine that when the object of a strike is unlawful any act in furtherance thereof is also unlawful, and that when the acts of strikers, although unaccompanied by violence or threats, are such an annoyance to others as to amount to coercion or intimidation they are unlawful. To that effect is *Hitchman Coal Co.* v. *Mitchell,* 245 U. S. 229, 62 L. ed. 260.

Without regard to any past expressions as to the legality of picketing without force or intimidation, the question before us is, What effect is now to be given the Anti-Injunction statute? One of the fundamental principles of our government is that the legislative power shall be separate from the judicial. To declare what the law is or has been is a judicial power; to declare what the law shall be is a legislative power. (1 Cooley's Const. Lim. (8th ed.) p. 191.) No proposition is better settled than that the State constitution is not a grant of power to the legislature but is a limitation upon its powers, and that the legislature possesses every power not delegated to some other department or to the Federal government or not denied to it by the constitution of the State or of the United States. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504; *Greenfield* v. *Russel,* 292 id. 392; *People* v. *Thompson,* 155 id. 451; *Harris* v. *Board of Supervisors,* 105 id. 445.) The question of the legality of the statute is therefore narrowed to an inquiry as to whether or not it contravenes any constitutional provision.

It is well settled that the legislature may, in the exercise of the police power of the State, enact those measures which have a tendency to promote the public comfort, health, safety, morals or welfare of society. (*Massie* v. *Cessna,* 239 Ill. 352; *Condon* v. *Village of Forest Park,* 278 id. 218.) The police power is considered capable of development and modification within certain limits, so that the powers of governmental control may be adequate and meet changing social and economic conditions. The power

is not circumscribed by precedents arising out of past conditions but is elastic and capable of expansion in order to keep pace with human progress. It is not a fixed quantity, but it is the expression of social, economic and political conditions. (*People* v. *Rosehill Cemetery,* 334 Ill. 555; *Public Utilities Com.* v. *City of Quincy,* 290 id. 360.) In the exercise of this power the legislature may enact laws regulating, restraining or prohibiting anything harmful to the welfare of the people, even though such regulation, restraint or prohibition interferes with the liberty or property of an individual. Neither the fourteenth amendment to the Federal constitution nor any provision of the constitution of this State was designed to interfere with the police power to enact and enforce laws for the protection of the health, peace, morals or general welfare of the people. *Powell* v. *Pennsylvania,* 127 U. S. 678, 31 L. ed. 253; *People* v. *Anderson,* 355 Ill. 289; *Town of Cheney's Grove* v. *VanScoyoc,* 357 id. 52.

Labor disputes are as old as organized society. It is not the province of this court to indulge in polemics as to the merits of these age-old controversies, nor are we permitted to speculate upon whether or not an act of the legislature is a wise or the best remedy for dealing with such problems. That is a matter committed by the constitution to the legislative branch of government. In passing upon a statute enacted under the police power this court will not search for reasons to hold an act invalid. On the contrary, he who challenges the constitutionality of a legislative act has the burden of clearly showing wherein the act violates the constitution. Every presumption is in favor of the validity of the act. *People* v. *Anderson, supra; Reif* v. *Barrett,* 355 Ill. 104; *Hunt* v. *Rosenbaum Grain Corp. supra; People* v. *City of Chicago,* 349 Ill. 304.

In *Truax* v. *Corrigan,* 257 U. S. 312, 66 L. ed. 254, which is largely relied upon by appellees, an Arizona law similar to the statute in controversy was held to contravene

the due process and equal rights clauses of the Federal constitution. In that case Truax and others, who operated a restaurant, refused to accede to the demands of the union concerning the terms and conditions of employment of certain cooks and waiters and a strike was called. A conspiracy and boycott to injure the proprietors in their business by inducing customers and other favorably disposed persons to cease patronizing them were entered into. The methods used included picketing, displaying banners advertising the strike, denouncing the proprietors as "unfair" to the union, appealing to customers to stay away, and the circulation of hand-bills containing abusive and libelous charges against the employers, their employees and patrons, with intimations of injury to future patrons. A complaint for an injunction was filed reciting the facts. The business was injured and a showing of irreparable damages was made. The Arizona Supreme Court affirmed an order of the trial court sustaining a demurrer and dismissing the complaint. The cause reached the Supreme Court of the United States upon writ of error. An examination of the opinion discloses that it is based not upon the provisions of the Arizona act but upon its effect as construed by the Supreme Court of that State. The Arizona court held that plaintiffs did not claim defendants had by violent means invaded their rights, and that if that kind of picketing were charged and established by proof, plaintiffs would be entitled to relief to the extent of prohibiting violence in any form. In the opinion of the United States Supreme Court Mr. Chief Justice Taft said: "The effect of this ruling is, that under the statute loss may be inflicted upon the plaintiffs' property and business by 'picketing' in any form if violence be not used, and that, because no violence was shown or claimed, the campaign carried on as described in the complaint and exhibits did not unlawfully invade complainants' right. The facts alleged are admitted by the demurrer, and in determining their legal effect as a

deprivation of plaintiffs' legal rights under the fourteenth amendment we are at as full liberty to consider them as was the State Supreme Court. * * * The only respect in such a case in which this court is bound by the judgment of the State Supreme Court is in the construction which that court puts upon the statute. * * * The real question here is, Were the means used illegal? The above recital of what the defendants did can leave no doubt of that." After a brief resumé of the acts committed, including the "threats of injurious consequences to customers," all linked together in a campaign, the court held they were not lawful persuasion or inducing and that violence could not have been more effective. Upon this basis it was held that the Arizona statute as construed by the Supreme Court of that State violated the due process and equal rights clauses of the Federal constitution. Plainly there was no intention on the part of the United States Supreme Court to hold the statute invalid because of its provisions as to peaceful picketing. Those provisions as a test of invalidity were not in any way applied.

The Clayton act, passed by Congress in 1914, (C. 323, sec. 20, 38 Stat. 738,) is similar in its purpose and provisions to the law in controversy but is more comprehensive in embracing a larger number of permissible peaceable activities.

In *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184, 66 L. ed. 189, the Supreme Court of the United States passed upon the merits of a labor controversy and construed the Clayton act. It said: "In the present case the three or four groups of picketers were made up of from four to twelve in a group. They constituted the picket line. Each union interested, electricians, cranemen, machinists and blacksmiths, had several representatives on the picket line and assaults and violence ensued. They began early and continued from time to time during the three weeks of the strike after the picketing

began. All information tendered, all arguments advanced and all persuasion used under such circumstances were intimidation. They could not be otherwise. It is idle to talk of peaceful communication in such a place and under such conditions. The numbers of the pickets in the groups constituted intimidation. The name 'picket' indicated a militant purpose inconsistent with peaceful persuasion. The crowds they drew made the passage of the employees to and from the place of work one of running the gauntlet. Persuasion or communication attempted in such a presence and under such conditions was anything but peaceable and lawful. When one or more assaults or disturbances ensued they characterized the whole campaign, which became effective, because of its intimidating character, in spite of the admonitions given by the leaders to their followers as to lawful methods to be pursued, however sincere. Our conclusion is that picketing thus instituted is unlawful and cannot be peaceable, and may be properly enjoined by the specific term because its meaning is clearly understood in the sphere of the controversy by those who are parties to it. We are supported in that view by many well-reasoned authorities, although there has been contrariety of view." Among the cases cited are the *Barnes & Co. case, supra,* and the *Franklin Union case, supra.* In the course of the opinion it was also said: "It is clear that Congress wished to forbid the use by the Federal courts of their equity arm to prevent peaceable persuasion by employees, discharged or expectant, in promotion of their side of the dispute, and to secure them against judicial restraint in obtaining or communicating information in any place where they might lawfully be. This introduces no new principle into the equity jurisprudence of those courts. It is merely declaratory of what was the best practice always. Congress thought it wise to stabilize this rule of action and render it uniform. The object and problem of Congress in section 20, and, indeed, of courts of equity before its

enactment, was to reconcile the rights of the employer in his business and in the access of his employees to his place of business and egress therefrom without intimidation or obstruction, on the one hand, and the right of employees, recent or expectant, to use peaceable and lawful means to induce present employees and would-be employees to join their ranks, on the other. If in their attempts at persuasion or communication with those whom they would enlist with them those of the labor side adopt methods which, however lawful in their announced purpose, inevitably lead to intimidation and obstruction, then it is the court's duty, which the terms of section 20 do not modify, so to limit what the propagandists do as to time, manner and place as shall prevent infractions of the law and violations of the right of the employees and of the employer for whom they wish to work. How far may men go in persuasion and communication and still not violate the right of those whom they would influence? In going to and from work men have a right to as free a passage, without obstruction, as the streets afford, consistent with the right of others to enjoy the same privilege. We are a social people, and the accosting by one of another in an inoffensive way and an offer by one to communicate and discuss information with a view to influencing the other's action are not regarded as aggression or a violation of that other's rights. If, however, the offer is declined, as it may rightfully be, then persistence, importunity, following and dogging, become unjustifiable annoyance and obstruction which is likely soon to savor of intimidation. From all of this the person sought to be influenced has a right to be free and his employer has a right to have him free." In holding that the law does not look with favor on an enforced discussion of the merits of the issue between individuals who wish to work and groups of those who do not, under conditions which subject the individuals who wish to work to a severe test of their nerve and physical strength and courage,

the court further said: "But while this is so, we must have every regard to the congressional intention manifested in the act, and to the principle of existing law which it declared, that ex-employees, and others properly acting with them, shall have an opportunity, so far as is consistent with peace and law, to observe who are still working for the employer, to communicate with them and to persuade them to join the ranks of his opponents in a lawful economic struggle." It was further held that each case must turn on its own circumstances, and that in the particular case the strikers and their sympathizers should be limited to one representative for peaceable observation, communication and persuasion at each point of ingress and egress at the plant and all others should be enjoined from loitering in the vicinity. The opinion in that case was filed at the same term of court as the Truax opinion, and holds that peaceable persuasion and peaceable picketing, not amounting to coercion, are lawful. We have quoted extensively from the opinion because it so well summarizes the law in a majority of the jurisdictions in this country.

In *Goldberg* v. *Stablemen's Union,* 149 Cal. 429, and *Pierce* v. *Stablemen's Union,* 156 id. 70, cited by appellees, the acts complained of in each case were held to amount to intimidation and coercion. In the latter case it was held that the injunction granted was too broad in restraining reasonable persuasion. It is impracticable to analyze or even refer to the multitude of cases upon the subject of picketing, but among the more recent decisions in line with the *American Steel Foundries case, supra,* are *Music Hall Theatre Co.* v. *Moving Picture Operatives,* 249 Ky. 639; *Kirmse* v. *Adler,* 311 Pa. 78; *Nann* v. *Raimist,* 255 N. Y. 307; *Bomes* v. *Providence Local No. 223,* 51 R. I. 499, 155 Atl. 581; *Bayonne Textile Corp.* v. *American Federation of Silk Workers,* 114 N. J. Eq. 807; *Scofes* v. *Helmar,* 187 N. E. (Ind.) 662; *Levy & Devaney* v. *Pocketbook Worker's Union,* 114 Conn. 319; *Stillwell Theatre*

v. *Kaplan,* 259 N. Y. 405; *Greenfield* v. *Central Labor Council,* 104 Ore. 236, 207 Pac. 168.

Inasmuch as the legislature had a right to legalize acts of peaceable picketing and peaceable persuasion, it necessarily follows that forbidding the restraint of such peaceable acts does not deprive anybody of a remedy for an injury or wrong, and such a remedy is all that the nineteenth section of article 2 of the constitution of this State is meant to guarantee. For the same reason the act does not contravene article 3 of the constitution, which provides for the redress of wrongs through the courts.

Section 12 of article 6 of the constitution of this State provides: "The circuit courts shall have original jurisdiction of all causes in law and equity." It is urged that because that statute prohibits the issuance of injunctions against the peaceable acts therein mentioned, the law deprives the circuit court of its jurisdiction fixed by the constitution and therefore contravenes that provision. In *Stephens* v. *Chicago, Burlington and Quincy Railroad Co.* 303 Ill. 49, we said: "The constitution confers upon the circuit court jurisdiction of all causes in equity, and the legislature is without power to deprive it of any part of this jurisdiction." It is to be noticed, however, that the statute in controversy does not deprive circuit courts of jurisdiction to restrain any unlawful act, nor of jurisdiction to determine whether or not any act complained of is legal or illegal. So far as the statute is concerned, circuit courts have the same jurisdiction in labor disputes they have always had, for it cannot be said that they ever had the power, by the constitution or otherwise, to prevent or penalize the performance of lawful acts concerning which no cause of action existed. Whenever the doing of an act is unlawful it gives rise to a cause of action, but it is inconceivable that any cause of action, legal or equitable, as contemplated by the constitutional provision, exists to restrain the performance of a lawful act. The fact

that an act is lawful indicates that it may be performed. Whenever the performance of any act otherwise legal entails a liability or a penalty, or becomes preventable for any reason, it ceases to be a lawful act and a cause of action exists in favor of the person aggrieved. Therefore persuasion, when so annoying as to become coercive, amounts to intimidation and is unlawful. It is not to be presumed that the legislature contemplated legalizing peaceable persuasion in furtherance of any unlawful strike or actionable conspiracy, because by the same token the peaceable acts would become unlawful. It may be said of the statute in controversy as was said of the Clayton act in the *American Steel Foundries case, supra:* "This introduces no new principle into the equity jurisprudence of those courts. It is merely declaratory of what was the best practice always. Congress thought it wise to stabilize this rule of action and render it uniform." The act does not abridge the jurisdiction of the courts, and does not contravene the constitutional provisions relating thereto.

What is here said disposes of the contention that the act grants special privileges and immunities, and of the further contention that it is an arbitrary and unlawful discrimination between different classes of persons and litigants. It grants no rights or privileges and it imposes no obligations, duty or penalty that did not exist before its passage. Neither does it abridge or alter any existing remedy.

The title of the act is, "An act relating to disputes concerning terms and conditions of employment." It is claimed that the title does not indicate anything as to injunctions or their prohibition or that it limits and restricts the jurisdiction of courts of equity, and that these subjects are not germane to the title. We have repeatedly held that although numerous provisions in an act are not expressed in the general title, the purpose of the constitutional provision is fulfilled when the general subject indi-

cated by the title reasonably covers the provisions of the act when they are related and have some connection, more or less direct, with the subject of the legislation. Unless the act contains matters having no relation to the title the constitutional provision is not violated. The provisions of the statute as to injunctions are not inconsistent with or foreign to the general subject. The act therefore does not violate the constitutional provisions requiring all acts to contain but one subject, which shall be expressed in the title. (*People* v. *Beemsterboer,* 356 Ill. 432; *People* v. *Hoffman,* 322 id. 174.) The act is not unconstitutional for any of the reasons advanced by appellees.

We come, now, to a consideration of the action of the chancellor in restraining the acts sanctioned by the statute, and in particular the suggestions of appellants in their answer to the bill. Inasmuch as the act is not unconstitutional, it necessarily follows that the chancellor erred in restraining the doing of any of the things sanctioned therein. In addition to the things enumerated in the statute, the answer suggested that the decree ought to provide that nothing therein contained shall be construed to restrain defendant unions from assigning two of their members or representatives to be, peaceably and without threats or intimidation, upon the public thoroughfares adjacent to the respective places of business of complainants for the purpose of carrying signs or placards announcing the strike and that the complainants are not employing union labor. Evidently it is impracticable for the legislature to prescribe in detail what constitutes peaceable persuasion. The power to determine whether or not acts complained of are within the terms of the statute was properly left in the courts. As was held in the *American Steel Foundries case, supra,* each case must be decided upon its own particular facts and circumstances. It may well be said that the carrying of placards containing threats, malicious, abusive or designedly false statements is anything but peaceable per-

suasion. It may also be said that signs containing no such statements may be carried so offensively or with such annoyance as to amount to intimidation and thus be unlawful. On the other hand, carrying signs merely announcing the strike and that an employer is not employing union labor, with the single purpose of securing accessions to the ranks of a union, may be wholly peaceable persuasion. If not unlawful it may not be restrained. There is no showing or finding in this case that the carrying of placards, as suggested by the answer, peaceably and without threats or intimidation, would not be peaceable persuasion, or that it might in any way amount to coercion or induce a breach of the peace. The mere fact that acts of violence had been previously committed would of itself furnish no justification for enjoining legal acts of peaceable persuasion. There was therefore no basis for restraining the displaying of the placards and it was error to have done it. When a court of equity takes jurisdiction of a cause it retains it for all purposes to do complete justice between the parties. Under the issues and the evidence the parties were entitled to have all their respective rights defined and adjudicated. We are of the opinion that the chancellor should have found that the record showed no grounds for enjoining the peaceable picketing and peaceable persuasion suggested by the answer.

The decree of the superior court is reversed and the cause is remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE DEYOUNG, dissenting.