Irene H. Hallam, Appellee, v. Rodney Hallam et al., Appellants.

Gen. No. 39,932.

Opinion filed February 1, 1939.

JOHN F. CUSACK, of Chicago, for certain appellant; ROBERT IRMIGER, of Chicago, of counsel.

I. J. BERKSON, of Chicago, for certain other appellants; EUGENE A. WEINBERG, of Chicago, of counsel.

WILLIAM L. BOURLAND, of Chicago, for certain other appellants.

ESSINGTON & McKIBBIN and CASSELS, POTTER & BENTLEY, all of Chicago, for appellee; GEORGE B. McKIBBIN, WALTER E. BEEBE, KENNETH B. HAWKINS and HAMILTON K. BEEBE, all of Chicago, of counsel.

Mr. Presiding Justice Hall delivered the opinion of the court.

On February 18, 1936, Irene H. Hallam filed her complaint in the circuit court of Cook county against the heirs and next of kin of Ralph M. Hallam, deceased, in which she charged that a postnuptial contract entered into between Irene H. Hallam and Ralph M. Hallam, her husband, is void because it was induced by duress and undue influence; also that the contract is void as being against public policy.

The contract was executed October 1, 1934, and provides that in consideration of the creation of an annuity, payable at the rate of $200 per month, by depositing with the Provident Mutual Life Insurance Company of Philadelphia, the sum of $41,439, together with the conveyance of considerable other personal property, by Ralph M. Hallam to Irene H. Hallam, Irene Hallam released all of her claim to or any right in any other property of Ralph Hallam; also all her right to any widow's award, or other claim against Hallam, or his estate, in case of his death, including any claim for alimony, maintenance or support, past, present or future, except as provided by the annuity. Hallam immediately deposited the sum of money mentioned with the Provident Mutual Life Insurance Company, as agreed, the annuity contract was issued, and beginning with November 1, 1934, and up to the time of the filing of the complaint herein on February 18, 1936, and after the hearing thereon, Irene Hallam has received the payments provided for in this contract. Insofar as anything to the contrary is shown by the record, she is still receiving these payments.

Upon the issues made by the pleadings, the cause was submitted to a master in chancery, and the master, after hearing a large amount of testimony, found and reported that the contract was free from fraud, duress and undue influence, and recommended that the com-

plaint be dismissed for want of equity. Objections to
the master's report were overruled and after a hearing
by the court upon objections and exceptions to the re-
port, the court entered a decree sustaining the master's
report and dismissing the complaint. This decree was
entered on June 8, 1937. Shortly after the entry of this
decree, the court's attention was called to an opinion
of the Supreme Court, entitled, *Berge v. Berge,* 366 Ill.
228, which had been filed on June 2, 1937, and there-
upon and on motion of the complainant, the court at
the September term, 1937, vacated the decree formerly
entered, and on October 14, 1937, entered another de-
cree in which it found that the contract between the
parties was null and void because of the fact, alone,
that it was contrary to public policy for the reason that
by its terms, Ralph M. Hallam was released of all obli-
gation to support his wife. This is an appeal from that
decree.

Plaintiff has filed cross errors here and urges that
the court was in error in finding that the contract was
not obtained through duress and undue influence.

The record indicates that Ralph M. Hallam was an
alcoholic, for which he had been treated at various hos-
pitals, sanitariums and institutions, and that the rela-
tion between the parties, for this reason, at times, had
been strained. On the other hand, the record also in-
dicates that in spite of this fact, he had apparently
been successful in business and had accumulated con-
siderable wealth. Early in the year 1932, Mrs. Hallam
consulted two lawyers, Adelor J. Petit and Robert C.
Baumgartner, each of whom testified in the hearing of
the case for defendants. The record indicates that cer-
tain securities and cash which had been accumulated
by the Hallams during their married life, were kept in
a joint safety deposit box in the First National Bank
of Chicago. Upon the advice of Baumgartner, Mrs.
Hallam transferred these properties to a vault in the

Continental & Commercial National Bank. Thereafter, and after consultation with their attorneys, Baumgartner was directed by both parties to prepare a draft of a postnuptial contract to be entered into between them. There seems to be little question but that Hallam was frequently in an intoxicated condition, at such times his attitude towards his wife was far from what it should have been, that he frequently threatened her with injury, and that she had often been compelled to leave him because of his conduct, threats and ill treatment.

Robert C. Baumgartner, plaintiff's attorney in connection with the negotiations had prior to the executions of the agreement referred to and the final execution thereof, testified, in substance, that other prior agreements had been drawn, which Mrs. Hallam refused to sign; that in conversations between the parties, Mrs. Hallam had stated to her husband that if he would refrain from drinking, she would renew their relations and live with him, but that she would not do so unless he would prove that he was able to refrain from drinking, to which he replied, in substance, that he had stopped drinking, that he wanted her to come back to him, but that if she insisted on the contract being entered into between them, $200 a month was all that he would agree to give her; that thereafter, the final draft of this contract was prepared by Baumgartner and that when it was executed, Judge Adelor J. Petit and Baumgartner, representing Mrs. Hallam, were present, together with Mr. and Mrs. Hallam and Hallam's attorney. He also testified that prior to this time, Mrs. Hallam had taken possession of certain securities and moneys in a vault in the Continental & Commercial National Bank, and that these securities together with certain moneys, were turned over to Hallam, with the exception of the articles mentioned in the contract, together with certain jewelry which Mrs.

Hallam retained; that thereafter, in accordance with the terms of the contract, Hallam deposited with the Provident Mutual Life Insurance Company the sum of $41,439, and that there was issued to plaintiff by this insurance company an agreement by which the insurance company should pay to the plaintiff the sum of $200 a month, the payments to begin on the first day of November, 1934, and a like amount to be paid thereafter at the expiration of each successive month during the lifetime of plaintiff.

In the case of *Berge v. Berge,* 366 Ill. 228, upon which case the trial court seems to have predicated its decision and decree, it appears that the parties were married in the year 1893 and separated in 1928; that after the separation the parties executed a certain instrument in which the husband, Fred Berge, was named as the first party and the wife, Lena Berge, the second party, and the agreement stated that in consideration of the husband conveying to his wife certain city property and delivering to her a note for $1,500 signed by his son, she agreed to and did, by the document, relinquish, convey and quitclaim to her husband all right, title and interest which she had in a certain farm then under contract of sale, to a third party, which contract had been made in the year 1920, by which this third party agreed to purchase the farm for $30,000, paying $1,500 cash on the execution of the contract and promising to pay $1,000 on or before March 1, 1922, and $27,500 on March 1, 1932. The husband and wife executed a deed conveying the premises to the third party, and in conformity with their contract with him, deposited the deed in escrow with another party, as trustee, to be delivered to the third party when he had completed his payments for the farm. The contract between the husband and wife contained the following provisions: " '. . . that said second party shall receive from the said first party annually, payable on the

first day of March of each and every year, beginning March 1, 1929, the sum of $600, said payments to be made to said second party during her natural life, out of the income of said farm.' These annual payments were made for the years 1929, 1930 and 1931.'' Also, it was provided: '' 'That the parties will live apart and neither will remarry unless they agree to vacate this agreement; that neither will molest the other; that Lena shall not contract any debt for which Fred shall be liable, and neither she nor any other person or persons on her behalf or with her authority, consent or procurement, shall or will institute any suit or civil process or proceedings whatever against the said husband, either for separate maintenance, alimony or support, it being hereby expressly understood and agreed that the aforesaid conveyances by the parties shall be in lieu of all rights of said parties hereto,' etc.'' The purchaser defaulted his contract and thereafter he and Fred Berge reached an agreement, by the terms of which the deed held by the trustee was, at Berge's direction, delivered to the purchaser, the purchaser and his wife conveyed the farm by deed to the trustee, and it was admitted that this trustee held the title for the benefit of Berge. Thereupon Berge claimed that he had no interest in the farm, had received no rent from it, and for that reason refused to make any further payments to his wife. It clearly appears that by the proceeding resorted to by Berge, he deliberately created a condition which would relieve him from carrying out the contract he had made with his wife, and insofar as the facts there are concerned, the case is not in any respect comparable to the instant case. In the case at bar we find the fact to be that the husband made the settlement agreement after plaintiff had been fully advised in the premises, and that the annuity trust was created and is irrevocable. There can be no question as to his good faith in the matter.

In *Lyons v. Schanbacher,* 316 Ill. 569, the Supreme Court said:

"It was formerly held in England and two or three States in this country that agreements between husband and wife for a separation were illegal, but it is now held by substantially all courts that such agreements are not *per se* invalid, and it is now the law that an agreement between husband and wife, fairly and understandingly entered into, adjusting and settling their mutual rights in each other's property, may be lawfully made. . . ." With reference to the agreement in that case, the court said:

"The purpose of this agreement was the renunciation of the marital obligation. One consideration for its execution was the release of appellant forever from any obligation to support or contribute to the support of his wife. The duty of the husband to support the wife is imposed upon him by law. It does not depend upon inadequacy of the wife's means but upon the marriage relation. Husband and wife may contract with each other as to their mutual property rights, but the husband cannot by contract, either before or after marriage, relieve himself of the obligation imposed upon him by law to support his wife. [Citing cases.]" *Lyons v. Schanbacher, supra,* has been followed by the Supreme Court in the case of *Vock v. Vock,* 365 Ill. 432, in the *Berge* case *supra,* and in the other cases there cited, and it seems clear that the Supreme Court of this State has determined that while a husband and wife may contract with each other as to their mutual property rights, that nevertheless, because of public policy, the husband cannot by contract relieve himself of the obligation imposed upon him to support his wife. Whether or not the Separate Maintenance Act, entitled, "An Act in relation to married men and women," as amended by an Act of July 11, 1935, creates a public policy different from that announced by the Supreme

Court, or does away with such policy entirely, seems never to have been considered. Section 1, ch. 68, par. 22, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.189], provides, in part, "that married men or women, who without their fault, now live or hereafter may live separate and apart from their wives or husbands, may have their remedy in equity, in their own names, respectively, against their said wives or husbands in the Circuit Court of the county where the wife or the husband resides for a reasonable support and maintenance while they so live or have so lived separate and apart."

In *Fenske Bros. v. Upholsterers International Union,* 358 Ill. 239, the Supreme Court said: "One of the fundamental principles of our government is that the legislative power shall be separate from the judicial. To declare what the law is or has been is a judicial power; to declare what the law shall be is a legislative power. (1 Cooley's Const. Lim. (8th ed.) p. 191.)"

However, the question for us to determine now, is whether or not, under the authorities cited, it can be said that Ralph Hallam, by the terms of the contract between the parties, divested himself of the obligation to support his wife in case the annuity failed through the insolvency of the insurance company, which, as we view the situation, would be the only contingency that could possibly arise which might result in her failing to receive that support from her husband to which she was entitled. In our opinion, Hallam did not seek to avoid his obligation, but, on the contrary, met it by creating this annuity as agreed. If the bill of complaint should be sustained and the contract releasing Hallam from further contributing to plaintiff's support be held to be void, it could not affect the trust created in her behalf, and in addition to the payment to her of $200 a month by the insurance company during her life, she would receive her distributive share

of Hallam's estate. We can see no equity in such a holding. Therefore, it is our opinion that the decree of the circuit court of Cook county should be and it is reversed.

*Reversed.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.